**DEXTER v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 3357.**

Circuit Court of Appeals, First Circuit.
Dec. 28, 1938.

770

James F. Armstrong, of Providence, R. I. (Hinckley, Allen, Tillinghast & Wheeler, of Providence, R. I., on the brief), for Dexter.

Louise Foster, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., on the brief), for Commissioner.

Before BINGHAM and WILSON, Circuit Judges, and McLELLAN, District Judge.

## WILSON, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals involving deficiency taxes of the petitioner for the years 1934 and 1935.

The Board found as facts that in July, 1927, the petitioner's son-in-law, A. C. de MaCarty, who was engaged in the insurance business, borrowed of The Safe Deposit National Bank of New Bedford, Massachusetts, the sum of $5,000, which was later reduced to $1,900. On April 28, 1931, the Bank increased the loan to $7,500, taking a new note for the amount with MaCarty and his wife as makers and the petitioner as endorser.

During the year 1932 the petitioner paid $800 on the note, reducing it to $6,700. The record does not show by whom the later payments were made that reduced the note to $6,300, but on July 26, 1933, a new demand note for $6,300 with collateral (expiring on October 18, 1933), was given to the Bank by the petitioner, which took the place of the $6,300 note given to the Bank by the MaCartys, and their note endorsed by the petitioner was marked "paid" by the Bank. That the petitioner made all the payments on the $7,500 note held by the Bank is indicated by the fact that on July 27, 1933, after the MaCartys were released on their note to the Bank, MaCarty gave the petitioner his demand note in the face amount of $7,500, payable to petitioner's order.

In January, 1930, MaCarty's obligations to the First National Bank of New Bedford amounted to $15,625, which was evidenced by the joint note of himself and wife; and on October 8, 1930, there was due the First National Bank from the MaCartys on this obligation the sum of $12,250. On October 9, 1930, they borrowed of the Bank an additional $2,500 on their note, with the petitioner as endorser.

In 1931 the $2,500 note was reduced to $1,500 and renewed with the petitioner as endorser, and the $12,750 note was reduced to $11,250, and also renewed with the petitioner as endorser.

In June, 1933, the petitioner paid the $11,250 note to the Bank by giving his own note secured by collateral and the MaCartys were released from liability on this note, but on the same day MaCarty gave his own demand note to the petitioner for the same amount. The petitioner also renewed in 1933 the $1,500 note on which he was endorser, by giving his own note to the Bank secured by collateral, and thereafter MaCarty was relieved of all liability to the Bank on the $1,500 note.

On September 27, 1933, the balance of the two notes of $11,250 and $1,500 were combined in one note for $12,750, signed

by the petitioner; and on December 14, 1934, the petitioner paid $10,000 on this note and renewed the balance of $2,750. This payment of $10,000 is one of the payments which the petitioner asks to be allowed as a deduction from his 1934 income as a payment on a worthless debt.

The Board further found that when on July 26, 1933, the petitioner gave a new demand note for $6,300 with collateral to the above Bank, which replaced one which had been executed by his son-in-law and daughter, on which he had been the endorser, the petitioner owed the same Bank two other notes covering advances made to him personally and amounting to $16,600. On October 16, 1933, the three notes were combined into one note amounting to $22,900. The petitioner also owed the Bank another note in the amount of $7,800, making his total indebtedness due in February, 1934, $30,700. During that month the petitioner paid $700 on this debt, without designating the note on which the payment was to be applied. On December 16, 1935, the petitioner paid $4,000 on the remaining $30,000 indebtedness. The Board found that both of the payments were made by the petitioner without requesting that they be allocated to any particular note or debt, and the Bank did not attempt to make any application of these payments. We cannot allocate them for him, nor can a claim made by the petitioner of a deduction of the amount of these payments from his income for 1934 and 1935 made nearly two years later be construed as an allocation of the payments on the son-in-law's obligations.

The petitioner also seeks to deduct the payment of $700 in 1934 and $4,000 in 1935 made on account of his own notes, either as losses incurred in transactions "entered into for profit," or as debts "ascertained to be worthless." The Board found as a fact that they were not incurred in transactions entered into for profit.

The statute applicable to the facts in this case is in Sec. 23(e) (2), (k) of the Revenue Act of 1934, Chap. 277, 48 Stat. 680, 689, 26 U.S.C.A. § 23(e) (2), (k), which provides as follows:

"§ 23. *Deductions from gross income.*

"In computing net income there shall be allowed as deductions:

    *    *    *    *    *    *

"(e) *Losses by individuals.* In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

    *    *    *    *    *    *

"(2) If incurred in any transaction entered into for profit, though not connected with the trade or business; or

    *    *    *    *    *    *

"(k) *Bad debts.* Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction."

We think that a reading of par. (e) (2) of this section, in view of the facts found by the Board, will disclose that it unquestionably prevents the deduction by the petitioner of a loss in either year, inasmuch as it limits deductions to losses "incurred in any transaction entered into for profit." By no stretch of the imagination can it be said that the petitioner entered into any of the transactions involving his son-in-law in anticipation of any profit to himself. As the petitioner does not question this specific finding of the Board and does not now seriously urge that he has met the statutory requirements governing deductible losses in this respect, even if the petitioner did sustain losses during the taxable years in question, he sustained none which the statute recognizes as coming within the category of deductible losses. This being so, it is, of course, immaterial when losses, if any, which are not recognized as deductible by the statute, were sustained.

The petitioner relies mainly on the payments claimed to have been in discharge of alleged worthless debts of his son-in-law.

The broad question here presented, therefore, is whether the sums of $700 and $10,000 paid by the petitioner on his own notes in the taxable year 1934 and the sum of $4,000 paid on his notes in 1935 may be deducted by the petitioner as a charging off of debts ascertained to be worthless or as deductible under par. (k) of Sec. 23, supra.

The petitioner contends that they are deductible on this ground for the reason that the payments were made to discharge obligations which were originally those of his son-in-law, who was unable to meet them;

but if this be not so, he contends that they should be treated as if they were made to satisfy such obligations. The record shows, however, that MaCarty was released by the Banks on his notes at the same time in 1933 that the petitioner gave his notes to the Banks in substitution therefor. The payments on any indebtedness which the petitioner seeks to deduct in 1934 and 1935, therefore, are those on the notes given by the petitioner himself to take up the notes previously given to the Banks by MaCarty.

■ As a prerequisite to the granting of any deduction, the taxpayer must prove that he comes within the statutory provisions covering the particular deduction he wishes to take, viz: pars. (e) (2) and (k) of Sec. 23, supra. The petitioner relies largely on the fact that he was on a cash accounting basis, and asserts because of that fact he could take no deduction on account of the obligation he acquired in 1933 until he had discharged them by paying cash, and as the payments above referred to were not made until 1934 and 1935, he should be allowed the deductions claimed in the years in which the payments were made.

■ The basis for the petitioner's claim that he is entitled to deduct the sums of $700 and $4,000 is that when he made these payments it was to discharge obligations which he had assumed for his son-in-law, who was financially worthless and could not repay him. But the Board of Tax Appeals found that these sums were not paid to discharge such obligations, but to reduce his own indebtedness. The son-in-law's indebtedness on the notes given to the petitioner remained the same. It necessarily follows that, since the record shows nothing except that only the petitioner's own obligations were reduced by these payments, he is not in a position to claim a deduction for these sums.

■ The petitioner urges that in determining what debts were discharged by these payments, the "first in, first out" rule should be applied. However, assuming without conceding that this is a proper case for such a rule, still we think we should not apply the rule here, since we do not know which of the notes, before they were consolidated, represented the earliest debt. The record merely shows that when the petitioner executed his note for $6,300 to the Safe Deposit National Bank, he also owed the Bank two other notes. There is a fair inference from the language of the record that the notes last referred to were the earlier ones, but, in view of the lack of proof, we think the rule should not be applied here. Instead, the petitioner must accept the finding of the Board that the sum of $700 paid the Bank in 1934, and the sum of $4,000 paid in 1935, were applied toward the satisfaction of his own note, and, without other proof, the payment of his own debt cannot be used as a ground for a deduction.

As to the $10,000 payment made by the petitioner in December, 1934, he seeks here to deduct a worthless debt owed him by his son-in-law, as he would not, be allowed to deduct amounts paid on account of his own indebtedness. Certain prior debts which the son-in-law owed the petitioner in 1932 and which are referred to above and in the Board's findings are not involved here as the issues concerning them have been decided.

The petitioner had loaned MaCarty $8,000 in 1931, and in 1932 the Board of Tax Appeals held that a note given as evidence of the loan for $8,000 and another for $1,000 were worthless and were properly deducted by the petitioner from his income for that year. It also found no evidence that his financial condition had improved in 1933 or 1934.

■ Obviously, when the petitioner gave in 1933 his own notes to the banks in renewal of notes of his son-in-law on which he was endorser, he ceased to be an endorser and he then became primarily liable as to the obligations covered by his own notes. It is also evident that thereafter the son-in-law had no liability except to the petitioner, which was openly acknowledged when the son-in-law executed the note of $11,250 on June 28, 1933, and the note for $1,500 given on July 27, 1933, to the petitioner and above referred to. The petitioner does not deny that they represent the only debts of the son-in-law to be considered here and that such debts came into existence in 1933.

■ In view of these facts, it is apparent that, for the purpose of determining whether the petitioner may deduct the debts which the son-in-law owed him, and acknowledged in 1933 by the giving of the notes above referred to, it is immaterial when he discharged the obligations of his son-in-law which he had personally assumed by giving his own personal notes. Therefore, the petitioner's argument that, since he was on

the cash accounting basis, he should be allowed to deduct any cash payments on his own note given in place of those of his son-in-law, does not meet the issue which must be proved here.

The Board has found that the petitioner acquired the notes of his son-in-law in 1933. These notes are the only evidence of a debt which might be deducted by the petitioner, even if ascertained to be worthless in 1934 and 1935; but they are not deductible for the reason that the petitioner knew they were worthless when taken in 1933 and that the first ascertainment of their worthlessness could not have occurred in 1934 or 1935. Thus the petitioner fails to meet the statutory requirements for a deduction of a worthless debt. The petitioner is, therefore, not in a position to contend that, under the circumstances disclosed, the notes which he received in 1933 had any value. Notes which are worthless when acquired do not add anything to a taxpayer's assets, and there is, of course, nothing to be charged off. This was pointed out by the Supreme Court in Eckert v. Burnet, 283 U.S. 140, 141, 51 S.Ct. 373, 374, 75 L.Ed. 911:

"The petitioner claims the right to deduct half that sum as a debt 'ascertained to be worthless and charged off within the taxable year' under the Revenue Act of 1926, c. 27, § 214(a) (7), 44 Stat. 9, 27 (26 U.S.C.A. § 955(a) (7).

"It seems to us that the Circuit Court of Appeals sufficiently answered this contention by remarking that the debt was worthless when acquired. There was nothing to charge off."

Similar conclusions were reached in Kinkead v. Commissioner, 3 Cir., 71 F.2d 522, 523, In re Park's Estate, 2 Cir., 58 F. 2d 965, 967, and Voliva v. Commissioner, 7 Cir., 36 F.2d 212; also cf. Appeal of Collin, 1 B. T. A. 305, and Poor v. Commissioner, 11 B. T. A. 781, affirmed without opinion 2 Cir., 30 F.2d 1019.

It appears that the petitioner in 1933 held notes of MaCarty which were valid and collectible, if funds were available, but which were in fact worthless from their inception and were known to be so by the petitioner. Under these circumstances the petitioner never was in a position to charge them off in any year since.

It is not denied that losses incurred in transactions entered into for profit may be deducted in the year they are sustained under par. (e) (2) of Sec. 23, supra, providing, of course, other statutory requirements are met; but different provisions apply to deductions for debts ascertained to be worthless under par. (k) of Sec. 23. At no time was the petitioner in a position to take a deduction in 1934 or 1935 under Sec. 23 (k) for a debt due him from his son-in-law ascertained to be worthless in those years, or as a deductible loss under Sec. 23 (e) (2).

The decision of the Board of Tax Appeals is affirmed.