Nicholas D'Alonzo v. Commissioner.
Nicholas D'Alonzo v. Commissioner
Docket No. 21320.
United States Tax Court
1951 Tax Ct. Memo LEXIS 112; 10 T.C.M. (CCH) 817; T.C.M. (RIA) 51251; August 31, 1951
C. Walter Randall, Jr., Esq., and Joseph A. Lamorelle, Esq., for the petitioner. Albert J. O'Connor, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TENTJENS, Judge: Respondent has determined a deficiency of $1,469.94 in petitioner's income tax for the calendar year 1945. Two issues are raised: (1) Whether petitioner was entitled to a deduction of $10,000 claimed as a non-business bad debt in his 1945 return, but now claimed as a loss; and (2) whether petitioner was entitled to deduct $25 for a contribution made to the Sea Isle City Fire Department. Findings of Fact Petitioner is an individual who resided in Narberth, Pennsylvania, at the time the petition herein was filed. His books were kept on the accrual basis and his individual *113 income tax return for the calendar year 1945 was prepared on that basis and filed with the collector for the first district of Pennsylvania. Early in 1938, Charles J. Margiotti was campaigning for nomination as a candidate for governor of Pennsylvania. Margiotti was introduced to petitioner and arrangements were made pursuant to which petitioner advanced $18,000 to various persons and organizations for use in the primary campaign on Margiott's behalf. The funds were so used. On May 11, 1938, Margiotti executed a judgment note in the sum of $18,000, payable to petitioner in sixty days, "with interest". At the time petitioner took the note he believed he was making a loan to Margiotti which would be repaid in full with interest. In order to put himself in funds with which to make the advances, petitioner borrowed $13,000 from a bank for which he paid four or four and one-half per cent and $5,000 from a nephew to whom he paid no interest. By October 1938 petitioner had received no payment, either of interest or principal, on the note. Accordingly, he addressed a letter to Margiotti requesting payment on account. Margiotti replied stating that he would see petitioner in several *114 days when he came to Philadelphia. Further letters were exchanged and petitioner's son also met with Margiotti on his father's behalf seeking payment. Finally, $1,000 was paid on account on May 27, 1940. In the meantime, petitioner had placed the note with a bank for collection. Later, in 1944, petitioner placed the matter in the hands of his attorney who then took up with Margiotti the question of payment. During these negotiations it developed that there was a dispute by Margiotti as to the nature of the advances made. He admitted signing the note, but said that petitioner first contributed $10,000 of the $18,000 to his campaign and loaned the remaining $8,000. As the campaign progressed, however, he had told petitioner that if enough money were collected for campaign purposes the entire amount would be repaid. Whether sufficient campaign funds were received to make payment possible does not appear. Toward the close of 1945, Margiotti finally offered to pay an additional $7,000 as a compromise settlement of the claim. This offer was accepted by petitioner on advice of counsel and in order to avoid protracted litigation. The terms of the compromise were that a check for $2,500 *115 be sent within a week and a check for $4,500 dated before the end of 1945 also be issued. These terms were varied and petitioner accepted a payment of $2,500 in the first week of January 1946 and several months later received the additional $4,500. The judgment note was then delivered to Margiotti. The total sum realized by petitioner on the note was $8,000. Petitioner's principal business is "clothing". He is an individual proprietor and has in his employ about 600 people. Prior to 1938 and during that year he made loans to his employees for which he charged no interest. He loaned money to others and did charge interest. Prior to 1938 petitioner was shown to have made a total of five loans at interest, aggregating $38,350, of which $32,750 was loaned in 1936 to a building and loan association. During 1938 petitioner made two loans in addition to the Margiotti transactions. From January 1, 1936 to December 31, 1945, petitioner made 83 interest bearing loans in addition to the loan to Margiotti. Including that loan, the total amount of the loans made during that period was $231,625, from which interest of $23,531.75 was received by petitioner. The number of loans per year ran from *116 one in 1936 to a high of seventeen in 1944. Petitioner was not in the business of making loans. On August 20, 1945, petitioner issued his check for $25, payable to the order of "Sea Isle City Volunteer Fire Department". The check was paid and represented a voluntary contribution from petitioner to that Fire Department. Opinion On his tax return for 1945, petitioner treated the loss resulting from his transactions with Margiotti as a non-business bad debt. He now abandons that position and argues, on brief, that "Petitioner has not shown, nor attempted to show, that the parties agreed that the debts in fact existed, or, that the debtor became insolvent or financially unable to pay the debt in 1945. Rather, the petitioner is claiming that the compromise settlement agreement of December, 1945, constituted an event giving rise to an ordinary loss in that year under the provisions of Section 23(e) of the Internal Revenue Code. [1]" *117 Petitioner then argues that his dealings with Margiotti either constituted a "transaction entered into for profit" or that the loss resulting from the transaction was a loss incurred in his business, which, he contends, was the "loan business". One difficulty with these contentions is that despite petitioner's disavowal the evidence conclusively establishes that the relationship which petitioner intended to enter into with Margiotti was that of creditor and debtor. Petitioner testified that he loaned Margiotti $18,000 and that he expected repayment in full with interest. A note was executed to evidence the loan and efforts to collect the full amount with interest were made. From petitioner's standpoint the transaction, pure and simple, resulted in Margiotti's becoming his debtor. And this Margiotti's testimony substantiates, at least so far as the $8,000 which he repaid is concerned. Having got so far it seems to us the only way petitioner can establish a deductible loss would be under section 23(k), I.R.C., [2] which sets out the conditions under which bad debts may be deducted. But petitioner disclaims seeking to bring himself within the provisions of that *118 section. Rightly so, we think, because he has not shown worthlessness in the year in question. Having a debt situation to deal with, and having disclaimed section 23(k), can petitioner nevertheless utilize the loss provisions of section 23(e)? We think not. There are a number of decisions to the effect that the separate provisions of the statute regarding losses and bad debts are mutually exclusive. Spring City Foundry Co. v. Commissioner, 292 U.S. 182; Reed v. Commissioner, 129 Fed. (2d) 908, (C.A. 4); Katherine J. Hanes, 2 T.C. 213. In the Hanes case this Court said: "A taxpayer may not deduct as a bad debt what in truth is a loss, and vice versa". In order to escape the effect of these cases petitioner must argue that this was not really a "bad" debt, albeit a debt, and that the "loss" resulted because he compromised what was rightfully due him to save the time and expense of litigation. And since he made the loan with *119 the expectation of profit by way of interest he thus became entitled to utilize section 23(e) and deduct his loss. We cannot agree in such a result. In one sense we suppose it can be said that all loans at interest are "transactions entered into for profit"; but we cannot believe it was intended that a taxpayer who finds himself with what he considers a bona fide loan can refrain from pressing collection of the full amount from a solvent debtor simply because he is faced with the necessity of litigation and then deduct the difference between what his debtor is willing to pay and the face of the loan as a "loss" under section 23(e). This petitioner had a debt. He acknowledges it was not a "bad" debt within section 23(k). We find no other provision of the statute under which he can deduct his loss. Petitioner's claim that he was in the loan business and that the loan to Margiotti was made in pursuit of that business is not substantiated by the evidence, and we have found as a fact that petitioner was not in the business of making loans. No showing was made of the amount of time spent by petitioner in making loans or that he ever held himself out as a money lender. True, there was *120 evidence that he had made loans over the years at interest, but their number, when broken down on a yearly basis was inconsiderable and alone would not justify the conclusion he was a money lender. It can be pointed out, of course, that had petitioner litigated his claim and had Margiotti's contention that $10,000 of the $18,000 note was in reality a political contribution been sustained, or had this Court so determined, petitioner would be no better off. Contributions for campaign expenses are not deductible. Regulations 111, section 29.23 (o)-1. We hold that respondent's disallowance of the claimed deduction of $10,000 was correct. On the issue with regard to the $25 contribution to Sea Isle City Volunteer Fire Department, respondent's action also must be approved. We reach this conclusion with reluctance since the propriety of deducting contributions to organizations of volunteer firemen is settled by the decisions of this Court. Roy C. McKenna, 5 T.C. 712; Isabella M. Sheldon, 6 T.C. 510. And see I.T. 4030, C.B. 1950-2, p. 23. In those cases, however, the Court was able to make findings of fact with regard to the nature, purposes, and character *121 of the donee organization. Here, we have at most the name of the organization to whose order the check was drawn and the fact the check was cashed. This, in our view, is not sufficient to establish the donee as being in fact the kind of organization to which a contribution would be deductible. Respondent's action in putting petitioner to strict proof in a matter of no more magnitude than here involved seems harsh, but that is what he has done and we are forced to conclude that petitioner has not met his burden of proof. Decision will be entered for the Respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or * * *↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - (1) General rule. - Debts which become worthless within the taxable year; * * *↩