JOHN F. BLANCHARD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Dockets Nos. 16365, 30767, 32384, 40264. Promulgated November 7, 1929.

*Melvin G. Palliser, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, and *L. H. Rushbrook, Esq.*, for the respondent.

1274

## OPINION.

LITTLETON: A great deal of evidence was introduced relative to the value of the patents in 1920. Although the patents cost only $12,000 and had been the basis of an unsuccessful business for six years, the evidence was to the effect that they were worth $135,000. There is no complaint made in the petition that any error was committed by the respondent in valuing them and in fact he did not

place a value upon them. Under these circumstances we do not consider it necessary to fix a value on the patents and, in addition, we regard it immaterial.

In his petition and brief petitioner uses the terms "loss" and "bad debt" interchangeably, but in any event his right to a deduction for either for any year depends on the contract with the Van Kannel Revolving Door Co.

Under the terms of the contract with the Van Kannel Revolving Door Co. it agreed to pay a lien indebtedness of $5,000 against the property transferred to it, and in addition agreed to pay the petitioner the sum of $165,000 in installments of $15,000 on December 31, 1921, and $25,000 each on December 31, 1922, to 1927, inclusive. These payments and the liability therefor were absolutely contingent upon the success of the enterprise and the amount of the gross sales of the Combusto Devices during the specified years: for instance, for the year ending December 31, 1921, the payment was fixed at $15,000 under paragraph 1, provided the gross sales during 1921 equaled $200,000, and if the sales did not equal $200,000, it was provided in paragraph 2 that petitioner should be paid 10 per cent on gross sales above $100,000 up to $199,000. By the terms of the contract petitioner was not entitled to anything for 1921 unless the gross sales were $100,000 or over.

For the years ending December 31, 1922, to 1927, the payments were $25,000 yearly and gross sales ranged from $300,000 to $1,000,000, but the payments likewise depended entirely on the amount of gross sales and were purely contingent. In no year did the gross sales equal the required amount either under paragraph 1 or 2, and the petitioner never received anything, nor was the Revolving Door Co. under any liability to pay petitioner anything. No debt was created, and no loss was suffered by reason of this contract during the taxable years.

A contingent debt or loss can not be deducted from gross income and a contingent liability is not a debt. With the performance of this contract the alleged payments ceased to be even contingent and at the time of the deductions taken by petitioner it had been demonstrated that he was not entitled to said payments and that none were due.

In *Luke & Fleming, Inc.*, 1 B. T. A. 12, petitioners had canceled certain policies of fire insurance on property, which was soon after burned. They claimed that they were still entitled to something under the policies and sought deduction for said amounts. In refusing the deduction the Board said:

To entitle a taxpayer to deduct from gross income, as a bad debt, an item ascertained to be worthless, and charged off in a given year, such a debt must have had an existence in fact. A debt which never existed cannot be charged

off. The right to a deduction arises from the discovery that something which had value has ceased to have it; a debt which never existed had no value to lose.

The taxpayer has not shown a debt to have existed from the insurance company to it. It must follow that it is not entitled to take as a deduction from gross income, in the nature of a bad debt, the item of $4,728.97 here in question.

*Louis Titus*, 2 B. T. A. 754, was a case in which the petitioner made advances to a reclamation district in California before it was legally organized. The district declined to pay him on the ground that it could not legally do so. He sought deduction from gross income for a subsequent year as a bad debt or loss. The Board disallowed it and said:

So far as the money spent for the benefit of the proposed reclamation district is concerned, it is not contended that any legal debt was created, although at the time the money was expended taxpayer believed it created a debt. In this respect the appeal falls squarely within the decision of this Board in *Appeal of Luke & Fleming, Inc.*, 1 B. T. A. 12. If the deduction be claimed as a loss sustained rather than as a bad debt, it is clear that such loss, if any, accrued at the time the money was expended.

In *Federal Fuel Co.*, 3 B. T. A. 814, the petitioner in 1919 put up $5,000 in cash to guarantee the performance of a contract, which was subsequently canceled because of failure to comply. The holder of the deposit refused to return it, on the ground that there was no liability and it was entitled to retain it. The taxpayer asked deduction in 1920. The Board disallowed it and said:

We have held that before a deduction can be allowed on account of a debt ascertained to be worthless and charged off there must first be a debt. *Appeal of Luke & Fleming, Inc.*, 1 B. T. A. 12; *Appeal of Louis Titus*, 2 B. T. A. 754. In this appeal any amount due by Hoffberger & Co. was at all times collectible. It is not intimated that they were not financially responsible and able to pay the amount. They denied owing the taxpayer anything, and claimed that the taxpayer owed them damages in excess of the amount. This appears to have been the only reason that the claim was not paid in full in 1919, when the controversy arose. It is true that in 1921 Hoffberger & Co. did pay one-fourth of the amount to the taxpayer in settlement of the claim.

If the debtor was not legally liable to the taxpayer, then there was no debt to become worthless. It can not become worthless because of inability to establish legally the liability for the debt, for in such a case there is not an ascertainment of worthlessness of an existing debt, but an ascertainment of the nonexistence of such a debt. *Appeal of Luke & Fleming, Inc., supra.*

If the taxpayer sustained a loss from the transaction, such loss is deductible only in the year in which the loss is sustained. It is sufficient for the purposes of this appeal to say that the loss was not sustained in 1920.

The case of *Missouri Valley Bridge & Iron Co.*, 14 B. T. A. 1162, was one in which the petitioner was engaged in the performance of a Government contract, and additions were ordered and made without authority. Petitioner sought deduction after efforts to collect were futile. The Board there said:

In the instant case the petitioner has wholly failed to prove that there was ever a valid debt due it from the United States. On the other hand, the record shows that the United States at no time admitted any liability and that the Court of Claims judicially determined that the petitioner had no valid claim for the amount in controversy, or for any other amount, and that it rendered judgment against the petitioner and dismissed its suit. The petitioner declined to appeal from that judgment and it became final some time in 1920. The decision of the Court of Claims was the ascertainment of the nonexistence of the debt that the petitioner claims, and is binding upon this Board. It follows that since no debt existed there was nothing to charge off or deduct.

In *Frank F. Nicola*, 1 B. T. A. 487, the taxpayer had a contract to share in the profits resulting from a sale of real estate and upon a cancellation of the contract it was held that it was not such a property right as to entitle him to deduct as a loss sustained from the sale or other disposition of property the amount of the profits which he had hoped to realize had the contract continued in force and a sale been made.

The case of *S. Naitove & Co.* v. *Commissioner*, 32 Fed (2d) 949 (Court of Appeals, District of Columbia), is an instructive case from the opposite angle of the proposition. In that case the contingent obligor sought deduction for contingent liabilities before paying them and before the amount of the liability had become fixed or due. A contract was entered into by the taxpayer with certain of its employees by which the employees were to share in the profits and losses for a period of five years. It was further provided that their shares of the profits should remain in the business until the end of the five-year period, and no part thereof should be withdrawn except by permission of the president.

For the year 1919 the first year of the agreement the employees were credited with $116,548.44 as their share. Taxpayer accrued this as a liability for 1919 and deducted it from gross income. In 1920 the taxpayer lost $90,000 and charged $41,765.68 of it against the employees' portion earned the previous year. In disallowing the deduction, the court reviewed a number of cases and concluded its opinion thus:

It will be observed that under the contract as set forth in the resolution all sums to which the employees might become entitled during the period of five years should remain in the business, and should be subject to pro rata deductions in the event of losses incurred in the business during the 5-year period. Appellant paid out nothing. It took nothing from its business. The entry on the books represented only a possible future liability. In other words, the profits and losses credited and charged to the account of each of the employees should be accounted at the end of the 5-year period, and if the credits exceed the losses the excess would represent the amount to which the employee would be entitled. On the other hand, if the losses exceeded the credits, the employee would be entitled to nothing. It follows that the events which were to determine and fix appellant's liability to its employees could

not occur until the expiration of five years; and, by the terms of the agreement, if an employee was discharged or left the employ during the period of five years, he should take nothing under the agreement, whether the credits were in his favor or not. It follows, therefore, that the events which were to determine and fix appellant's liability did not occur in the year 1919, and could not occur so as to admit of a final determination until the end of the 5-year period, at which time the definitely fixed and accrued expense could be deducted and credit taken on its tax in the current year.

In the instant case the contingencies never happened that would entitle petitioner to the amounts claimed as deductions and it follows that their disallowance was proper. If they had been debts their worthlessness was not ascertained and could not have been, for the Revolving Door Co. was a prosperous concern, doing a $1,000,000 business and profits from $100,000 to $150,000 annually.

*Judgment will be entered for respondent.*