CURTIS R. AND ESTELLE WILHELM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilhelm v. Commissioner
Docket No. 8193-89
United States Tax Court
T.C. Memo 1991-513; 1991 Tax Ct. Memo LEXIS 562; 62 T.C.M. (CCH) 992; T.C.M. (RIA) 91513; October 9, 1991, Filed *562 Decision will be entered for the respondent. Curtis R. Wilhelm, pro se. Carroll D. Lansdell, for the respondent. COLVIN, Judge. COLVIN
MEMORANDUM OPINION Respondent determined the following deficiencies and additions to tax for petitioners: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(2)
6661
1981
$ 16,956
$ 847.80
*
--
1982
3,413
170.65
*
--
1983
11,814
590.70
*
$ 2,953.50
1985
10,535
526.75
*
2,633.75
The following issues are in dispute: 1. Whether respondent's determination relating to petitioners' dividend and interest income and deductions should be sustained. We hold that it should. 2. Whether petitioners are liable for additions to tax for (a) negligence under section 6653(a)(1) and (2) for 1981, 1982, 1983, and 1985; and (b) substantial understatement of income tax under section 6661 for 1983 and 1985. We hold that they are. References to petitioner in the singular *563 are to Curtis R. Wilhelm. All section references are to the Internal Revenue Code as amended and in effect for the tax years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Petitioners are husband and wife who lived in Gillette, New Jersey, when they filed their petition in this case. Petitioners filed Federal income tax returns for 1981, 1982, 1983, and 1985. Petitioners timely executed Forms 872 and 872-A, Consents to Extend the Time to Assess Tax, for 1981, 1982, and 1983. Petitioners were the taxpayers in Wilhelm v. Commissioner, T.C. Memo 1978-443, affd. 622 F.2d 580 (3d Cir. 1980), relating to their 1973 tax year. Petitioner was executor of his father's estate. In Wilhelm v. Commissioner, supra, we held that petitioner was not entitled to deduct: (1) A theft loss for money his father had deposited in trusts because he did not show that a theft had occurred; (2) the estate tax paid by the estate; (3) a casualty loss for damage to flowers on his property because he did not prove the amount of the loss; or (4) depreciation and business expense deductions which he did not *564 substantiate. We also held that petitioners were subject to the addition to tax for negligence. Respondent's determination is presumed correct and petitioners bear the burden of proving otherwise. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Petitioner indicated at trial that he is aware that he bears the burden of proof on each issue before the Court. Despite this, he did not present any testimony with respect to the issues raised in the notice of deficiency. He offered some documents into evidence, but none were admitted because he had not exchanged them with respondent before trial as required by the Court's standing pretrial order served on petitioners approximately 5 months before the trial. Rule 104(c)(2). Respondent argued at trial in the case before us that all of the deductions claimed in this case except for the Entex partnership loss (described below) arose from the estate of petitioner's father, George Wilhelm, and Wilhelm v. Commissioner, supra, which involved petitioners' 1973 year. Petitioners argue that the time for assessment of tax under the statute of limitations had expired for their 1981, 1982, and 1983 *565 tax returns. We disagree. Petitioners consented to extend the time for assessment by submitting Forms 872 and 872-A for 1981, 1982, and 1983. The notice of deficiency was mailed on March 3, 1989, which is within 3 years of April 15, 1986. Sec. 6501(a) and (b)(1). Petitioners argue that respondent has never examined or audited their 1985 tax return and it should be accepted as entered. We disagree. We believe that under the circumstances here, with identical deductions claimed in successive years, respondent's determination was properly made. Petitioners argue that respondent's case is frivolous, respondent has not presented any original evidence to the Court, and respondent's evidence is uncorroborated hearsay. We disagree. Petitioners bear the burden of proof on all issues here. Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Petitioners argue they have been denied the right of proper counsel in this case since the death of George J. Wilhelm on August 14, 1972. We disagree. Although the petition also protests the denial of counsel, the record shows no request made for an entry of appearance of counsel for petitioners. To the extent petitioner *566 is referring to his experience in prior cases, that issue is not before us. Petitioner wishes to argue that lawyers have ignored the will of his father, and that respondent has never listened to the moral and theft issues relating to his father's estate. However, we will deal only with the issues properly before us relating to petitioners' 1981 to 1983 and 1985 tax years. Petitioners also assert that there is no deficiency and no additions to tax apply. We disagree, and sustain respondent's determination. 1. Petitioner's Income
Section 61 provides that, "Except as otherwise provided * * *, gross income means all income from whatever source derived, including (but not limited to) the following items." Interest and dividends are includable in gross income. The parties stipulated that petitioners believe that there are questionable items of interest income reported to respondent by payers and they therefore excluded these items from their returns. However, nothing in the record supports this claim by petitioners. A comparison of the amounts received against the amounts reported by petitioners on their returns supports respondent's deficiency determination. Payers of interest *567 and dividends filed annual information reports which indicate a large number of payments were made to petitioners during 1981, 1982, 1983, and 1985. Respondent listed and itemized these reports as part of the Information Returns Program (IRP). Respondent compared petitioners' tax returns with the IRP's and prepared an interest and dividend income worksheet (the worksheet) for each year showing the payments indicated by the IRP's which were not listed on petitioners' tax returns for 1981, 1982, 1983, and 1985. On November 28, 1989, respondent served Respondent's Request for Admissions on petitioners. Paragraphs 9, 10, 11, and 12 listed each account of interest and dividend income received by petitioners in 1981, 1982, 1983, and 1985 as shown on the IRP's and asked petitioners to admit its receipt. Petitioners filed a response in which they failed to address any of the specific matters in Respondent's Request for Admissions. After respondent's motion and two insufficient responses by petitioners, the Court ordered that petitioners' receipt of these amounts was deemed admitted. We hold that petitioners received but failed to report taxable dividend income they received in 1981, *568 1982, 1983, and 1985, in the amounts of $ 20,340, $ 6,033, $ 14,363, and $ 47,188, respectively, and taxable interest income for 1981, 1982, 1983, and 1985, in the amounts of $ 13,756, $ 4,309, $ 6,954, and $ 12,807, respectively. 2. Petitioners' Deductions
Deductions and credits are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any deductions or credits claimed on their returns. Deputy v. Du Pont, 308 U.S. 488, 493, 60 S. Ct. 363, 84 L. Ed. 416 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 78 L. Ed. 1348, 54 S. Ct. 788 (1934); Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Except for the Entex partnership loss, all of the deductions claimed by petitioners arise either from the Estate of George Wilhelm or from petitioners' 1973 year, which was the subject of Wilhelm v. Commissioner, supra.
Section 172 allows a deduction for a net operating loss. If a net operating loss has been incurred, the deduction may be allowed in other tax years. However, before the carryback or carryforward issue is reached, we must decide whether or not a net operating loss has been incurred. *569 In its broadest terms, section 172 provides for a deduction when the taxpayer's deductible business expenses exceed his income. In determining the allowable net operating loss for the loss year several modifications, as set forth in the Code, are made; the balance is permitted to be carried back 3 years and forward 15 years. Sec. 172. Petitioners' claimed deductions represent personal expenses, such as petitioner's estimate of money due him for his time spent, and claims for moneys allegedly due petitioners or due the Estate of George Wilhelm from the Internal Revenue Service. Furthermore, the same deductions claimed in 1981, 1982, 1983, and 1985, the years in issue, were claimed by petitioners on their 1980 return. Respondent contends that petitioners' 1980 return was mistakenly previously accepted without adjustment. The following deductions are in issue. a. 1981
Petitioners claimed a $ 38,082 casualty loss deduction on their 1981 return. This deduction is a claim for moneys in bank accounts in the name of George Wilhelm In Trust for Silva Wilhelm which moneys petitioners claim were stolen. This includes $ 10,002.93 in the Dime Savings Bank of Brooklyn as of May *570 1977, and $ 7,513.33 in the Bowery Savings Bank as of March 1977, for a total of $ 17,516.26. This deduction was previously litigated in Wilhelm v. Commissioner, supra.In that case the Court found that petitioners had not shown that any loss had occurred. After 1981, petitioners reported this as a claim for a net operating loss in the form of either a casualty or a theft loss. The claimed loss represents a claim for moneys in bank accounts in the name of George Wilhelm In Trust For Silva Wilhelm in the amount of $ 17,516.26. Petitioners have not explained the difference up to $ 38,082, but respondent believes it is intended to represent what the accounts would have accumulated in interest since 1977. We find the difference to be accumulated interest. Petitioners claimed a $ 35,207 net operating loss deduction which includes several items. The $ 9,886 default claim is for an alleged overpayment in estate tax by the Estate of George Wilhelm, which amount has not been paid, and does not form the basis for any allowable deduction available to petitioners. The $ 3,874 finder's fee is a claim for reward that petitioners filed with the Internal Revenue Service *571 in 1979 and again on June 1, 1988, and which allegedly has not been paid. Failure to receive income does not give rise to a deductible loss. Blanchard v. Commissioner, 17 B.T.A. 1271 (1929); Estate of Thompson v. Commissioner, a Memorandum Opinion of this Court dated May 23, 1944. Petitioners claimed a Schedule C bad debt deduction for expenses and services incurred in 1977 and 1978 (for having to go to Court) in the estimated amount of $ 5,000 as a portion of the net operating loss on their 1981 return because they believe that they are entitled to a deduction for expenses incurred, i.e., cost of transcripts, etc., during 1977 and 1978 in connection with Wilhelm v. Commissioner, supra, the Tax Court case, and their subsequent Court of Appeals case with respect to their 1973 taxable year. Such expenses, if substantiated, might give rise to some deduction in 1977 and 1978, the years of payments. However, they do not give rise to a net operating loss carryforward. Petitioners claimed a Schedule C $ 16,447 business loss deduction for 1978, 1979, and 1980 (expenses and time for handling his father's estate). This represents petitioner's *572 estimate for the time he spent handling his father's estate based on an hourly rate of $ 15. This is not an allowable loss which gives rise to a net operating loss carryforward. b. 1982
Petitioners claimed $ 75,517 in net operating loss deductions for 1982. This deduction includes several items such as a $ 38,082 deduction for theft loss. This duplicates the $ 38,082 casualty loss claimed by petitioners on Schedule A of their 1981 return. Petitioners agree that they are not entitled to both. All of the other items claimed by petitioners as the net operating loss on their 1982 return duplicate items claimed as a net operating loss on their 1981 return except for an additional amount for expenses and time for handling petitioner's father's estate based on $ 15 per hour. The $ 9,886 deduction for default claim 843 - 12/8/75 was also claimed as a net operating loss in 1981. The $ 3,874 deduction for finder's fee filed in Appeals Court #79-1261 was also claimed as a net operating loss in 1981. The $ 5,000 bad debt deduction for expenses and services incurred in 1977 and 1978 (for having to go to Court) is identical to the item claimed as an net operating loss in 1981. The *573 $ 18,675 deduction for loss from business 1978, 1979, 1980, and 1981 (expenses and time for handling his father's estate) is identical to the item claimed as a net operating loss in 1981 but with an additional amount of $ 2,228 for expenses and time based on the $ 15 per hour. Petitioners claimed a $ 6,407 surety bond deduction on their 1982 return. This represents the $ 4,000 surety bond petitioners filed with the Clerk of the Tax Court to stay assessment and collection of the deficiency in income tax for taxable year 1973 decided in Wilhelm v. Commissioner, supra, pending petitioners' appeal to the Third Circuit. The balance of $ 2,407 represents petitioners' calculation of interest. Petitioners state that the money is still in the Treasury and has not been returned to them. The $ 4,000 bond does not represent a deductible loss. The $ 2,407 for interest was never included in income and is not deductible. Respondent also states that petitioners have not properly made their claim for return. The absurdity of petitioners' claimed loss for the interest that the money would have earned needs no further discussion. c. 1983
Petitioners claimed a $ *574 223,168 net operating loss deduction in 1983 that included several items. The $ 33,326 theft loss deduction duplicates the $ 38,082 casualty loss claimed by petitioners on their 1981 return and also duplicates the $ 38,082 Schedule A 1981 theft loss claimed by petitioners as part of the net operating loss on their 1982 return. There was no evidence offered as to why petitioners reduced the amount to $ 33,326, but in any event it is not deductible as part of any net operating loss. The $ 6,407 for deduction for surety bond in 1980 duplicates the $ 6,407 surety bond deduction claimed by petitioners on their 1982 return. Petitioners' $ 164,760 deduction for services to the Government as executor of the Estate of George Wilhelm is not an allowable loss which gives rise to a net operating loss carryforward. The $ 18,675 business loss deduction incurred in 1978, 1979, 1980, and 1981 (expenses and time for handling his father's estate) is a duplicate of that item claimed by petitioners as a net operating loss on their 1982 return. The $ 164,760 deduction for services to the Government as executor of the Estate of George Wilhelm claimed by petitioners as part of the net operating loss *575 on their 1983 return represents petitioner's calculation of his services on behalf of the Government based on $ 15 per hour. d. 1985
The $ 109,760 net operating loss deduction duplicates items claimed on prior years' returns but at a reduced amount. The difference is shown on petitioners' Schedule C. Petitioner's 1985 Schedule C deduction was $ 82,552. It is based on the following: estate administration, $ 12,000; default claim, $ 9,896; finder's fee, $ 3,874; casualty and theft loss, $ 17,516; surety bond, $ 4,000; and interest, penalties, and late charges, $ 35,276. This duplicates items claimed in prior years as net operating losses, casualty losses, surety bond deductions, and theft losses. Petitioners claimed a $ 9,417 ordinary loss from Entex, a partnership, on their 1985 return. The Forms K-1 attached to petitioners' 1985 return indicate that the ordinary loss allowable from Entex is $ 772; that is, $ 386 for Curtis Wilhelm, and $ 386 for Estelle Wilhelm. Petitioners claim the difference in the loss amounts was the result of the sale of the partnership interest. Petitioners have not substantiated this claim. Petitioners have made no showing of any basis, either *576 legally or factually, for any of the claimed deductions other than the $ 722 from Entex. The unsubstantiated claims have become more and more absurd with each passing year. In any year after petitioners started the practice of taking repetitive deductions, if there were no examination, the taxpayer would have had the repeated benefit of the deductions. We hold that petitioners are not entitled to a $ 38,082 casualty loss deduction for 1981, to a $ 6,407 surety bond deduction for 1982, to a $ 82,552 Schedule C loss deduction for 1985, to net operating loss deductions for 1981, 1982, 1983, and 1985 in the amounts of $ 35,207, $ 75,517, $ 223,168, and $ 109,760, respectively, or a $ 9,417 partnership loss deduction from Entex for 1985. However, as determined in the notice of deficiency, petitioners are allowed $ 722 as an Entex partnership loss deduction in 1985. 5. Additions to Tax
Section 6653(a) imposes an addition to tax for an underpayment due to negligence or intentional disregard of rules and regulations. Petitioners bear the burden of proving that they exercised due care and acted reasonably and prudently. Rule 142(a); Neely v. Commissioner, 85 T.C. 934, 947 (1985). *577 Petitioners have not shown that they made a reasonable attempt to comply with the rules and regulations with respect to any of the issues in this case and, thus, are liable for the additions to tax under section 6653(a)(1) and (2) for 1981, 1982, 1983, and 1985. Petitioners prepared their own returns for each of the years in issue. Petitioners' 1981 tax return was an attempt by petitioners to resolve their differences respecting their 1973 year and the Estate of George Wilhelm; it was not a reasonable attempt to properly report their 1981 income. Petitioners have also attempted to claim deductions for an item previously litigated and denied. Petitioners continued on this course, rather than file proper tax returns, for all of the years at issue here. In addition, petitioners have admitted that they have already received the benefit of the same deductions claimed in 1981, 1982, 1983, and 1985, the years in issue, as they were claimed by petitioners on their 1980 return, which respondent contends was mistakenly accepted without adjustment. Furthermore, petitioners disregarded the Forms 1099 sent to them by the various payers. Petitioners have offered no explanation with respect *578 to the addition to tax for negligence. We sustain respondent's determination that petitioners are liable for the addition to tax for negligence for 1981 through 1983 and 1985 under section 6653(a)(1) and (2). Section 6661 imposes an addition to tax if the taxpayers substantially understate their income tax liability. The addition to tax is imposed at a rate of 25 percent for additions to tax assessed after October 21, 1986. Pallottini v. Commissioner, 90 T.C. 498, 503 (1988). An understatement is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2). A substantial understatement is an understatement of tax which exceeds the greater of 10 percent of the amount required to be shown on the return or $ 5,000. Sec. 6661(b)(1). In both 1983 and 1985 petitioners' understatements are substantial because they exceed the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Petitioners do not argue that they have substantial authority for their positions or that they adequately disclosed their positions on their returns. Accordingly, we sustain respondent's determination *579 that petitioners are liable for the addition to tax for substantial understatement of income tax under section 6661 for 1983 and 1985. Decision will be entered for the respondent. Footnotes
*. 50% of the interest payable for the entire deficiency.↩