KATHERINE J. HANES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109222.   Promulgated June 23, 1943.

*H. A. Mihills, C. P. A.*, for the petitioner.
*Elmer L. Corbin, Esq.*, for the respondent.

ARUNDELL, *Judge:* The Commissioner determined income tax deficiencies for the years 1939 and 1940 in the respective sums of $36.34 and $1,535.92. The present proceeding concerns only the latter year and has to do with an item that was claimed in the return as a loss, but which is now alleged to be deductible as a bad debt. The facts are largely stipulated.

Petitioner. a resident of Winston-Salem, North Carolina, filed her return for 1940 with the collector at Greensboro, North Carolina.

In October 1937 petitioner purchased an oil painting from Victor B. Lonson, who held himself out to be an expert in matters of art and a representative of a New York art gallery. The painting was represented to be the original work of a celebrated English artist, and the purchase price, based upon warranties as to its genuineness, was $5,000. This amount was represented by three checks signed by petitioner and made payable to Lonson, the first for $500 dated·currently, the second for $2,500 dated April 15; 1938, and·the third for $2,000 dated July 15, 1938. The $500 check was paid by the bank, but before the other checks were presented for payment petitioner stopped payment on them because she had learned that the painting was merely a copy of the painting she thought she was buying.

In 1940 petitioner was sued by one Foxman, holder of the $2,500 check, and by one Doward, holder of the $2,000 check. The Foxman suit was determined in favor of petitioner by the Superior Court of North Carolina and the verdict was upheld by the Supreme Court of North Carolina, 218 N. C. 722. Attorneys' fees incurred by petitioner in connection with the Foxman suit in the sum of $500 were paid on March 30. 1940. The Doward suit was disposed of by a compromise settlement before completion of the trial. As required by the terms of the settlement petitioner paid Doward the sum of $1,750 in 1940. Court costs in connection with the Doward suit were incurred and paid by petitioner in 1940 in the amount of $23.05. Lonson, payee of the two checks upon which petitioner was sued, did not appear at either trial.

In the Foxman suit the verdict of the jury was that the execution of the $2,500 check upon which suit was brought had been procured by fraud; and the North Carolina Supreme Court held that there was "plenary evidence * * * that the check upon which this suit is founded was procured by the false and fraudulent representations of the payee of the check. Victor B. Lonson. * * * Indeed. it seems to have been conceded on all sides that the evidence showed that a fraud was perpetrated on the defendant in palming off a comparatively worthless painting for the work of the artist John Constable." The court held, as a matter of law, that, since the check did not bear

the endorsement of the payee, Foxman was not a holder in due course but was merely an equitable owner who took subject to all defenses available to the maker against the payee.

Counsel were engaged by petitioner to resist the Foxman and Doward suits and diligent efforts were made in petitioner's behalf to locate Lonson. A New York detective agency was engaged for this purpose. Despite these efforts Lonson could not be located and had not been located at the time of the hearing herein. The investigations disclosed that other persons were attempting to locate Lonson, claiming that he owed them money or had defrauded them. Petitioner's counsel abandoned hope in 1940 of locating Lonson and were satisfied, from their investigations, that even if he were located nothing could be collected from him, inasmuch as the information obtained by them was that he was a financially irresponsible person.

On her return for 1940 petitioner claimed as a loss deduction the amount paid in compromise and the court costs of the Doward suit and the attorneys' fees incurred in the Foxman suit.[1] Counsel for petitioner now contends that the amounts expended are deductible as debts which became worthless in the tax year. Sec. 23 (k), Internal Revenue Code, as amended by sec. 124, Revenue Act of 1942.

The difficulty with petitioner's present view is that the statutory deductions for losses and bad debts are mutually exclusive. *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182; *Thomas* v. *Commissioner*, 100 Fed. (2d) 408; *Arthur Berenson*, 39 B. T. A. 77; affirmed *per curiam*, 113 Fed. (2d) 113. A taxpayer may not deduct as a bad debt what in truth is a loss, and *vice versa*. The plain fact in the present case, taking the evidence in the light most favorable to petitioner, is that she was defrauded and suffered a loss. The transaction giving rise to the loss, however, was a purely personal one, not entered into for profit and not connected with any trade or business. The loss did not result from casualty or theft. Consequently, as counsel for petitioner correctly perceives, the loss sustained was not one for the deduction of which provision is made in section 23 (e) of the Internal Revenue Code. Being thus thwarted on one ground, petitioner seeks to convert the nondeductible loss into a deductible bad debt under section 23 (k). Since these two subsections are mutually exclusive, the nature of the item in dispute must determine which is applicable. The item in controversy here is a loss, and accordingly for this reason alone petitioner's appeal must fail. There was no debt as that word is used in subsection (k). The most that petitioner had was an unadjudicated claim for damages due to fraudulent warranties. The liability, so far as we know, was

---

[1] The deduction for attorneys' fees was in the amount of $900 on the return, but it is conceded that the proper figure is $500.

not conceded by the alleged debtor and the validity of the claim has never been tested in a court proceeding to which he was a party. Even a conceded liability does not invariably create a debt which may be deducted upon the ascertainment of its worthlessness. The court said in *Wadsworth Mfg. Co. v. Commissioner*, 44 Fed. (2d) 762:

   \* \* \* It is impossible to consider the claim apart from the facts which gave it rise—the contract, its partial performance, its breach, and the completion of the building by petitioner. So considered, it is obvious that that which was determined to be worthless and was charged off was an unadjudicated claim for breach of contract. This is not a "debt" within section 234 (2) (5) of the Revenue Act of 1921. *Lewellyn v. Electric Reduction Co.*, 275 U. S. 243, 48 S. Ct. 63, 72 L. Ed. 262.

Hence, whether or not Lonson, if found, would have acknowledged his liability, or whether petitioner's claim could have been reduced to judgment against him, are questions which are immaterial here; for the fact is that an unadjudicated claim, which is all petitioner had, may not form the basis of a bad debt deduction. *Philip H. Schaff*. 46 B. T. A. 640. Furthermore, even upon petitioner's theory the alleged debt did not arise until she had paid out the money. and, if it be conceded that a debt was created. the evidence establishes that it was worthless at that very moment. It is settled that a debt worthless in its inception can not give rise to a bad debt deduction. The outlay. if deductible at all. must be such as a loss or an expense. *Young. Inc. v. Commissioner*. 120 Fed. (2d) 159. 165 ; *Eckert v. Burnet*, 283 U. S. 140. affirming 42 Fed. (2d) 158. "If they should be treated as debts at all. they were debts taken as debts for whatever they may have been worth. and there was nothing to charge off. since they did not decrease in value after the petitioner got them." *Park v. Commissioner*. 58 Fed. (2d) 965. Accordingly, even upon petitioner's theory she could not prevail with the present facts.

*Decision will be entered for the respondent.*