ALLEN et ux. v. EDWARDS.

HARDIN et ux. v. EDWARDS.

YOUNG et ux. v. EDWARDS.

Nos. 985, 986, 987.

United States District Court
M. D. Georgia, Macon Division.

Sept. 18, 1953.

Furman Smith, Spalding, Sibley, Troutman & Kelley, Atlanta, Ga., for plaintiffs.

Frank O. Evans, U. S. Atty., Macon, Ga., Walter H. Beaman, Jr., Special Asst. to Atty. Gen., for defendant.

DAVIS, Chief Judge.

These three actions, involving three separate taxpayers (and their respective wives on joint return), arise out of the same transaction and involve the same questions. They were argued and submitted together. The question is raised by motions of plaintiffs for summary judgment supported by the pleadings, a stipulation of the parties, and two affidavits in behalf of plaintiffs. Defendant filed no counteraffidavit. The following facts appear without dispute:

In 1946 the taxpayers organized Home Builders Corporation and subscribed to its entire capital stock of $50,000. The corporation was organized to and did engage in the business of making prefabricated houses. In order to induce the Trust Company of Georgia to make loans to the corporation, the taxpayers signed an agreement in which they jointly and severally guaranteed to the Trust Company of Georgia the payment of all indebtedness Home Builders Corporation might at any time owe to the Trust Company of Georgia. They also signed agreements in which they agreed that any indebtedness that Home Builders Corporation might owe them would be subordinate and inferior to all indebtedness Home Builders Corporation might owe Trust Company of Georgia and that no payment would be made to them as long as Home Builders Corporation was indebted to Trust Company of Georgia in any amount.

The venture was disastrously unsuccessful. By December 1, 1947, Home Builders Corporation was hopelessly insolvent. It then owed Trust Company of Georgia $160,000. Trust Company of Georgia, on December 8, 1947, called on the taxpayers to make payment on their guaranty of the obligation of Home Builders Corporation. The taxpayers in 1947, 1948 and 1949 made payments to Trust Company of Georgia on their liability under their guaranty. As taxpayers made payments, they became subrogated to the rights of the Trust Company of Georgia against Home Builders Corporation and Trust Company of Georgia endorsed over to them without recourse the notes of Home Builders Corporation.

Also, on March 29, 1947, in order to induce Ira H. Hardin Co., Inc. to erect certain prefabricated houses manufactured by Home Builders Corporation, Home Builders Corporation and each of the three taxpayers individually guaranteed Ira H. Hardin Co., Inc., against loss on the erection of such houses. There was a loss in excess of $15,000 on the erection. Ira H. Hardin Co., Inc. agreed to accept $15,000 in settlement of the liability and the taxpayers paid to Ira H. Hardin Co., Inc. $15,000. Home Builders Corporation recognized that it was the principal obligor of that guaranty, and gave taxpayers notes for the amounts

they paid Ira H. Hardin Co., Inc. on that guaranty.

Taxpayers claimed on their income tax returns for the years 1947, 1948 and 1949 the amounts paid in each year on those guaranties as ordinary losses deductible in full from ordinary income. On audit of the returns, the Commissioner of Internal Revenue determined that the losses occurred in the amounts and in the years claimed but determined that the losses occurred because "a non-business debt becomes worthless within the taxable year" within the meaning of Section 23(k)(4) of the Internal Revenue Code, 26 U.S.C.A., and therefore were allowable only as short-term capital losses. He assessed deficiencies against the taxpayers accordingly.

The Commissioner necessarily determined that the claims acquired by the taxpayers against Home Builders Corporation were worthless when acquired, for the losses could not have been allowed under Section 23(k)(4) as determined by the Commissioner unless such claims had been worthless. This was alleged in the pleadings and not denied in the answer. The claims acquired by the plaintiffs on the payments made on the guaranties were worthless when acquired as claimed by taxpayers and allowed by the Commissioner.

The taxpayers paid the deficiencies so assessed to Marion H. Allen, Collector of Internal Revenue for the District of Georgia. The taxpayers duly filed claims for refund, which were denied. Plaintiffs thereupon brought these actions for refund against Marion H. Allen, Collector of Internal Revenue. Marion H. Allen having died pending the actions, Samuel Edwards as his Administrator was by order duly substituted as party defendant.

Jurisdiction is admitted in the pleadings, and the Court finds that the Court has jurisdiction of the parties and the subject matter.

Plaintiffs filed motions for summary judgment on the grounds that under the undisputed facts the losses were not losses from "debts which become worthless within in the taxable year" within the meaning of Section 23(k), but were losses sustained during the taxable year and not compensated for by insurance or otherwise in a transaction entered into for profit within the meaning of Section 23(e) of the Internal Revenue Code.

The Court concludes that the losses sustained by the taxpayers were losses on transactions entered into for profit within the meaning of Section 23(e) and not losses from debts which became worthless within the meaning of Section 23(k).

The parties are agreed that Section 23 (k) and Section 23(e) are mutually exclusive. Section 23(k) is the narrow particular section. Section 23(e) is the broad residuary section which covers losses not specifically covered by Section 23(k) and other similar subsections of 23. Cf. Spring City Foundry v. Com'r of Internal Revenue, 292 U.S. 182, 54 S.Ct. 644, 78 L. Ed. 1200. The plaintiffs concede that if the losses were losses from "debts which become worthless within the taxable year" within the meaning of Section 23(k), then the losses would not be allowable under Section 23(e) and the motion for summary judgment should be denied. On the other hand, it is not denied that if the losses are not covered by Section 23(k), they are covered by Section 23(e), for there is no other reason that would take such losses out of the broad language of Section 23(e). The narrow question for decision by the Court, therefore, is whether the losses were losses from debts which became worthless within the taxable year within the meaning of Section 23(k).

This question has been decided by the Supreme Court in Eckert v. Burnet, 283 U. S. 140, 51 S.Ct. 373, 374, 75 L.Ed. 911, in which the Court said:

"The facts of the transaction concerned were that the petitioner and his partner were joint endorsers of notes issued by a corporation that they had formed. There remained due upon these notes $44,800, that the corporation was unable to pay. In 1925 the petitioner and his partner in settlement of their liability made a joint note for that sum to the bank that held the corporation's paper, received the old notes, · marked paid, and destroyed

them. The petitioner claims the right to deduct half that sum as a debt 'ascertained to be worthless and charged off within the taxable year' under the Revenue Act of 1926, c. 27, § 214(a) (7), 44 Stat. 9, 27.

"It seems to us that the Circuit Court of Appeals sufficiently answered this contention by remarking that the debt was worthless when acquired. There was nothing to charge off. The petitioner treats the case as one of an investment that later turns out to be bad. But in fact it was the satisfaction of an existing obligation of the petitioner, having, it may be, the consequence of a momentary transfer of the old notes to the petitioner in order that they might be destroyed. It is very plain we think that the words of the statute cannot be taken to include a case of that kind."

The decision of the Supreme Court is even clearer when read in light of the decision of the Court of Appeals below, 2 Cir., 42 F.2d 158. It is further illumined by Helvering v. Price, 309 U.S. 409, 60 S.Ct. 673, 84 L.Ed. 836, in which the ruling of the Eckert case is reaffirmed, and by the decision of the Court of Appeals reversed by the Supreme Court in that case, 4 Cir., 106 F.2d 336.

■ The Eckert case has been cited and followed in many cases on the principle that a debt worthless when created or acquired by a taxpayer cannot be the basis of a bad debt deduction under Section 23(k), but must be deducted, if at all, as a loss under Section 23(e). Dexter v. Com'r of Internal Revenue, 1 Cir., 99 F.2d 769; Reading Co. v. Com'r of Internal Revenue, 3 Cir., 132 F.2d 306; Park v. Com'r of Internal Revenue, 2 Cir., 58 F.2d 965; Crowder, 19 T.C. 329; Hanes, 2 T.C. 213.

Indeed this result is implicit in the statute. Section 23(k) applies only to "debts which become worthless within the taxable year". As the Supreme Court pointed out, a debt which is worthless when acquired by the taxpayer cannot be said to become worthless in his hands.

Counsel for defendant contends that the rule that a debt worthless when acquired cannot be the basis of a bad debt deduction applies only when the debt is voluntarily acquired and has no application if the debt is involuntarily acquired. If a debt worthless when acquired cannot be said to "become worthless" in the hands of the taxpayer if voluntarily acquired, no reason appears why it can be said to "become worthless" in the hands of the taxpayer when involuntarily acquired. Indeed, in the Eckert case, the leading case in which the principle is laid down, the debt was involuntarily acquired. The facts in that case are almost exactly the same as the facts of this case. See also Dexter v. Commissioner, 1 Cir., 99 F.2d 769; Park v. Commissioner, 2 Cir., 58 F.2d 965, and Hanes, 2 T. C. 213, in each of which the worthless debt was involuntarily acquired.

The exact question here at issue was decided in favor of plaintiffs by the Second Circuit in Fox v. Commissioner, 2 Cir., 190 F.2d 101, and by the Tax Court in Greenspon, 8 T.C. 431, in which the Commissioner has acquiesced. Counsel for the defendant seeks to distinguish those cases on the ground that in the former the principal debtor was dead at the time of payment and in the latter the principal debtor corporation had been liquidated at the time of payment of the guaranty. The Court does not consider that the death or liquidation of the principal debtor, prior to payment by the guarantor, should or does change the result. To so hold would permit the shifting of the tax by the simple expedient of deferring payment on the guaranty until the insolvent principal debtor corporation is liquidated.

It must be confessed that there is considerable confusion on this point, and it may not be possible to reconcile all the statements in the several cases, but the Court is of the opinion that the Eckert case lays down the controlling rule. No useful purpose would be served by discussing all the other cases considered by the Court.

■ Counsel for defendant argues that there is no difference between a loan and a guaranty and therefore the tax re-

sult should be the same. There is a substantial difference between a loan and a guaranty. Ordinarily a loan is an investment made for the purpose of securing interest income. It is a capital asset. It is reasonable that Congress should treat a loss on the disposition or worthlessness of such capital asset just as a loss on the disposition of any other capital asset. But a guaranty is not a capital asset. It is not an asset at all but a liability. It is difficult to see how a loss on the payment of such liability can be said to be a loss from a capital asset becoming worthless.

Counsel for defendant argues that the essence of the transaction and the cause of the loss was the failure of taxpayers to be able to recover over against the principal debtor on their right of subrogation. The acquisition of such claim against the principal debt was not the essence or the purpose of the transaction. Taxpayers did not make payment to the Trust Company of Georgia, or to Ira H. Hardin Co., Inc. for the purpose of acquiring a worthless claim against Home Builders Corporation, but made those payments for the purpose of satisfying their liability on their guaranties. Of course, if and to the extent they had been compensated by acquiring a valuable claim against Home Builders Corporation they would not have been able to deduct the loss under Section 23(e), which in terms requires that the loss be "not compensated for by insurance or otherwise". But the loss was caused by the necessity of making payment on their liability and not by their failure to obtain salvage. As the Supreme Court said in the Eckert case, under facts almost exactly the same as the facts in this case, "The petitioner treats the case as one of an investment that later turns out to be bad. But in fact it was the satisfaction of an existing obligation of the petitioner, having, it may be, the consequence of a momentary transfer of the old notes to petitioner in order that they might be destroyed. It is very plain we think that the words of the statute cannot be taken to include a case of that kind."

The Court therefore concludes that the losses are not losses from debts becoming worthless within the meaning of Sec-

tion 23(k) but are allowable in full as ordinary losses and that the motion for summary judgment must be granted. Let judgment be submitted accordingly.