**POLLAK et al.**
**v.**
**COMMISSIONER OF INTERNAL REVENUE.**

**No. 11166.**

United States Court of Appeals Third Circuit.

Argued Dec. 14, 1953.

Decided Jan. 6, 1954.

Mason G. Kassel, New York City, for petitioner.

S. Dee Hanson, Washington, D. C. (H. Brian Holland, Assistant Atty. Gen., El-lis N. Slack, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before MARIS, GOODRICH and Mc-LAUGHLIN, Circuit Judges.

MARIS, Circuit Judge.

This is a petition by the taxpayers to review a decision of the Tax Court as to their income tax liability for the taxable year 1949. The sole question involved is whether the court erred in holding that a loss sustained by the taxpayers in that year was a non-business bad debt deductible as a short-term capital loss only to the limited extent permitted by Section 23(k) (4) of the Internal Revenue Code, 26 U.S.C., rather than an ordinary loss resulting from a transaction entered into for profit and deductible in full under Section 23(e) (2) of the Code, as the taxpayers contend. The facts as found by the Tax Court are as follows:

The taxpayers, Leo L. and Virginia M. Pollak, husband and wife, filed joint returns for the year 1949 with the Collector of Internal Revenue for the Fifth District of New Jersey. The taxpayers each purchased 200 shares of stock of the Pollak Engineering and Manufacturing Corporation for $20,000 at its inception in January, 1947. Leo L. Pollak was an officer and employee of the corporation.

Leo L. Pollak and another stockholder joined on January 12, 1949, in a guarantee to a bank of loans by the bank to the corporation up to $200,000. They had endorsed notes of the corporation to the bank for $200,000 during the period from October 4, 1948, to December 13, 1948, Leo L. Pollak believing that the corporation would prosper and he would not lose as a result of the endorsements. The corporation, on April 6, 1949, filed a petition for reorganization under the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. Leo L. Pollak paid the bank $100,000 under his guaranty. The first payment was made on March 14, 1949, and the last on June 23, 1949.

The assets of the corporation were sold during the last six months of 1949 pursuant to the plan of reorganization under which the general creditors, including Leo L. Pollak, received 3.59% of their claims. The corporation was indebted to Leo L. Pollak, at the date of the consummation of the plan, in the total amount of $141,928.33 and he received, on or about December 15, 1949, $5,095.24, representing 3.59% of the total amount due him as a general creditor. The affairs of the corporation became progressively worse after it began to be apparent late in 1948 and early in 1949 that it would not be able to perfect an electrical cigarette vending machine on which it was working and spending large amounts for tools, parts, raw materials and other items. Leo L. Pollak knew, when he made the payments to the bank under his guaranty, that he would eventually recover only a small part of the amount which the corporation would owe him.

The taxpayers, on their joint return for 1949, claimed, under the item "Miscellaneous", a deduction of $94,904.76 for Leo L. Pollak's "Payment as Guarantor on Note." The Commissioner, in determining the deficiency for 1949, disallowed the entire deduction claimed in the return under "Miscellaneous." On the basis of these facts, the Tax Court, affirming the Commissioner's determination, held that Leo L. Pollak's payment to the bank in the taxable year, as guarantor of the corporation's notes endorsed by him, constituted a loss sustained from a statutory non-business bad debt deductible only to the limited extent permissible under the statute as a short-term capital loss, and not in full as an ordinary loss. 20 T.C. 376. The Tax Court thereupon entered its decision accordingly from which the taxpayers petitioned this court for review.

We are satisfied that in so holding the Tax Court erred. It is doubtless true, as the Commissioner says, that under the doctrine of subrogation the corporation became indebted to Leo L. Pollak for the payments made by him on his endorsements and guaranty as and when he made them. But these payments were made under a legal obligation of endorsement and guaranty which he had entered into previously at a time when he believed that the corporation would prosper and that he would not lose as a result of his action. It is utterly unrealistic to suggest, as the Tax Court does in its opinion in this case, that Leo L. Pollak when he entered into this transaction "fully intended and expected to be repaid by the then existing solvent corporation if he was ever called upon to make good his endorsement or guaranty". On the contrary we all know that a stockholder who thus loans his credit to his corporation does so in the hope and expectation that the corporation, with the additional credit thus made available to it, will succeed in preserving or adding to the value of his stock. He hopes and expects not to have to make good on his guaranty but knows that if the venture fails and he must pay, his chances of reimbursement from the defaulting corporation are likely to be very remote. And so here it is obvious that Leo L. Pollak expected, when he made his endorsements and guaranty, to realize a gain on the value of his stock in the corporation through the improvement of its business. He knew, of course, that if the business failed he would have to pay but he certainly could not have contemplated reimbursement by the losing corporation in that event.

It follows that the payments which Leo L. Pollak made in 1949 were in fulfillment of the prior contracts of endorsement and guaranty which he had entered into for profit, that is, for the protection and enhancement of his investment in the corporation. They could not have been made with any expectation of their repayment as a debt due by the then insolvent corporation which actually was able to repay him only $3,590 of his payments of $100,000. We conclude that

the loss of $96,410 which he suffered was a loss incurred in a transaction entered into for profit within the meaning of Section 23(e) (2) of the Internal Revenue Code and not a non-business debt which became worthless in 1949 within the meaning of Section 23(k) (4) of the Code as added by Section 124(a) of the Revenue Act of 1942. In this conclusion we are supported by the decision of our brethren of the Second Circuit in Fox v. Commissioner of Internal Revenue, 1951, 190 F.2d 101. It is true that in that case the principal debtor was deceased, his estate was insolvent and his executors had been discharged before the guarantor made her payments, while here the principal debtor was in existence, even though almost totally insolvent, when the payments were made. We see no legal significance in this difference, however. For in each case the payments were made in fulfillment of a pre-existing legal obligation and not because of any present expectation of repayment by the principal debtor. And in each case the debt arising under the doctrine of subrogation was substantially uncollectible from the time it arose.

Moreover, for this very reason the loss was not "compensated for", within the meaning of Section 23(e) of the Internal Revenue Code, by the acquisition of an equivalent asset, a collectible debt. And by the same token the loss could not be a debt which, within the meaning of Section 23(k) (4) "becomes worthless within the taxable year". For the debt, if we call it such, was worthless when acquired and, therefore, did not and could not *become* worthless at any time thereafter. In Eckert v. Burnet, 1931, 283 U.S. 140, 51 S.Ct. 373, 75 L. Ed. 911, the Supreme Court under quite similar facts held that the debt due by a principal debtor to the endorsers of its notes who paid them through giving notes of their own was not deductible under the Revenue Act of 1926 as a bad debt because it was worthless when acquired. As Justice Holmes put it, 283 U.S. at page 141, 51 S.Ct. at page 374:

"There was nothing to charge off." In Helvering v. Price, 1940, 309 U.S. 409, 60 S.Ct. 673, 84 L.Ed. 836, the Court adhered to its decision in the Eckert case and it is controlling here. The Commissioner seeks to avoid its effect by asserting that it applies only to debts voluntarily acquired. We see no basis in reason or in the statute for such a distinction, however. Indeed the facts in the Eckert case indicate that the acquisition of the debt in that case was no more voluntary than in the case before us.

The Commissioner strongly relies upon Shiman v. Commissioner of Internal Revenue, 2 Cir., 1932, 60 F.2d 65, as authority to the contrary. That case, however, involved only the question whether a payment under a guaranty could be deducted as a bad debt or must be considered as a non-deductible gift. The court held in that setting that it was a bad debt and deductible as such. The question whether the payment could be deducted as a loss was not considered by the Court of Appeals. To the extent that some of the language used by the court in its opinion is thought to be opposed to our conclusion in the case before us we believe it to be inconsistent with the rule announced in the Eckert case. In this connection it is to be noted that the Court of Appeals for the Second Circuit in its opinion in the Fox case, to which we have previously referred, made no reference whatever to its earlier Shiman opinion. Obviously the opinion in the Fox case must be taken as the current expression of the views of that court upon the question.

Finally we note that the District Court for the Middle District of Georgia in Allen v. Edwards, 1953, 114 F.Supp. 672, a case almost on all fours with the one now before us, reached the same conclusion to which we have come.

The decision of the Tax Court will be reversed and the cause will be remanded for further proceedings not inconsistent with this opinion.