Samuel **EDWARDS**, Administrator of the Estate of Marion H. Allen, deceased, former Collector of Internal Revenue for the District of Georgia, Appellant,

v.

**H. C. ALLEN, Jr.,** and Margaret B. Allen, Appellees.

Samuel **EDWARDS**, Administrator of the Estate of Marion H. Allen, deceased, former Collector of Internal Revenue for the District of Georgia, Appellant,

v.

Ira **H. HARDIN** and Bessye Allen Hardin, Appellees.

Samuel **EDWARDS**, Administrator of the Estate of Marion H. Allen, deceased, former Collector of Internal Revenue for the District of Georgia, Appellant,

v.

Sykes **H. YOUNG** and Carroll M. Young, Appellees.

Nos. 15018, 15019, 15020.

United States Court of Appeals, Fifth Circuit.

Nov. 16, 1954.

Carolyn R. Just, Ellis N. Slack, Fred E. Youngman, Sp. Asst. Attys. Gen., H. Brian Holland, Asst. Atty. Gen., Frank

O. Evans, U. S. Atty., Floyd M. Buford, Asst. U. S. Atty., Macon, Ga., A. F. Prescott, Sp. Asst. to Atty. Gen., for appellant.

Furman Smith, Atlanta, Ga., Spalding, Sibley, Troutman & Kelley, Atlanta, Ga., of counsel, for appellees.

Before HOLMES, BORAH and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

We have here for consideration the question as to whether payments made by the stockholders and officers of a corporation to satisfy a guaranty agreement previously executed by them in order to obtain additional credit for their wholly owned corporation, such payments being made when the corporation's assets had dwindled to the point that they would never thereafter be sufficient to reimburse them, caused such stockholders to sustain losses during the taxable year "incurred in [a] transaction entered into for profit," within the meaning of Section 23(e),[1] Internal Revenue Code of 1939, or whether such payments gave rise to non-business debts which became worthless within the taxable year within the meaning of Section 23(k)(4)[2] of the Code. If they fall within the former section they are fully deductible in computing ordinary income; if the latter, they are deductible only as short term capital losses.

The trial court found that these losses were properly claimed by the taxpayers to be deductible under Section 23(e), and the defendant appealed.

The facts are not really in dispute, since the trial judge disposed of the case on a motion for summary judgment filed by the taxpayer, supported by two affidavits in addition to an affidavit attesting to the truth of certain facts contained in the complaint. The facts necessary to an understanding of the issues are:

In 1946 the taxpayers organized Home Builders Corporation to engage in the business of making prefabricated houses, and subscribed to its entire capital stock of $50,000. Taxpayers served as officers of the corporation. In order to induce the Trust Company of Georgia to make loans to the corporation, the taxpayers signed an agreement in which they jointly and severally guaranteed to the Trust Company of Georgia the payment of all indebtedness Home Builders Corporation might at any time owe to the Trust Company of Georgia. They also signed agreements in which they agreed that any indebtedness that Home Builders Corporation might owe them would be subordinate and inferior to all indebtedness Home Builders Corporation might owe Trust Company of Georgia and that no payment would be made to them as long as Home Builders Corporation was indebted to Trust Company of Georgia in any amount.

The venture was unsuccessful. In December 1947 when the corporation was indebted to the trust company for $160,-

---

1. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

* * * * *

"(e) Losses by individuals. In the case of an individual loss sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *."

2. "§ 23, Deductions from gross income. In computing net income there shall be allowed as deductions:

* * * * *

"(k) (As amended by Sec. 124(a) of

the Revenue Act of 1942, c. 619, 56 Stat. 798, and Sec. 113(a) of the Revenue Act of 1943, c. 63, 58 Stat. 21) Bad debts.

* * * * *

"(4) Non-business debts. In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term 'non-business debt' means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

000, as evidenced by its promissory notes, the trust company called on the taxpayers to make payment on their guaranty and advised them that the notes would not be renewed on their guaranty unless substantial payment were made. The taxpayers paid a portion of the debt and endorsed new notes which the corporation gave in renewal of the balance. The trust company endorsed the corporation's original notes without recourse, and delivered them to taxpayers. Further payments and renewals were made during 1948, and each time the old notes were endorsed to the taxpayers without recourse. In the latter part of 1948 when the debt had been reduced to $45,000, taxpayers substituted their personal obligations, and paid them off by the end of 1949, thus retiring the entire $160,000 debt.

There was also a guaranty agreement between the Home Builders Corporation and the Ira H. Hardin Company, Inc., to induce the Hardin Company to erect certain prefabricated houses manufactured by the corporation. This agreement took the form of a letter dated March 29, 1947, from Home Builders Corporation to the Hardin Company, signed by taxpayers as officers of the corporation and also individually, guaranteeing to protect the Hardin Company against any loss on the erection of the houses. When the Hardin .Company sustained a loss in excess of $15,000, it agreed to accept $15,000 in satisfaction of the corporation's liability, which was paid by the taxpayers in 1948, and the Home Builders Corporation gave the taxpayers its notes for the amounts they had paid.

Since the financial condition of the corporation steadily declined in the years following 1947, it paid nothing to taxpayers to retire the $175,000 in notes which they held against it. On April 24, 1950, taxpayers sold to a bona fide purchaser all their stock in the corporation together with the notes they had received by endorsement from the trust company for $33,550.03. After deducting expenses of the sale the net purchase price received by taxpayers was approximately $31,000.

By affidavit it was shown that at no time from December 1, 1947, (the first payment was made on December 16, 1947) until after the final payments in 1949 were the assets of the corporation worth more than $25,000. Upon the payment of the final sum in 1949 the taxpayers received notes from the corporation of the value of $18,450, which reduced the amount of the loss sustained and deducted in that year to that sum.

The commissioner allowed taxpayers to take only capital loss deductions as non-business bad debts within the meaning of Section 23(k)(4), Internal Revenue Code. Taxpayers brought suits for refund of the deficiencies paid, claiming deductions for ordinary losses incurred in a trade or business or in a transaction entered into for profit within the meaning of Section 23(e), Internal Revenue Code. The District Court held in favor of the taxpayers on their motions for summary judgment. From those decisions, the Collector has appealed to this Court.

There are here combined three cases involving the same questions, inasmuch as all three plaintiffs below made payments in varying amounts under identical circumstances and with the same legal effect flowing therefrom.

1. Appellant here contends, and appellees concede, that Sections 23(e) and 23(k) are mutually exclusive; further, that 23(e) is a general broad residuary clause which covers those losses, and only those losses, which are not covered by the other more particular subsections of Section 23. The taxpayers then concede that if the losses in question were deductible as losses from "debts which became worthless within the taxable year" within the meaning of 23(k) they could not be deducted under 23(e). Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200.

2. Appellant Collector of Internal Revenue contends that these losses

are from such debts that became worthless within the taxable year "if they are deductible at all." Taxpayers insist that they are not, first, because it was not the fact that the debt became worthless that caused their loss, but rather it was these payments made to a worthless debtor that caused it; and, second, they say that the debts did not become worthless within the taxable year, because the debts to them were already worthless when they sprang into existence by the payment the taxpayers made to the bank on behalf of the corporation to discharge their previously assumed obligation. We believe the taxpayers are clearly right in this. Pollak v. Commissioner, 3 Cir., 209 F.2d 57; Eckert v. Burnet, 283 U.S. 140, 51 S.Ct. 373, 75 L.Ed. 911.

Arguments made by appellant to the effect that the Eckert case did not decide that a loss such as here incurred did not result from a debt becoming worthless within the year is not supported by an analysis of that case. There, on a state of facts otherwise very similar to those before the Court here, the taxpayer gave his own promissory note to satisfy his guaranty instead of, as was here the case, actually making cash payment. In the lower court the taxpayer had claimed in the alternative; that he was entitled to declare a loss under the provisions of the Section comparable to 23(e), resulting in his having given his personal note to take up the obligation of the insolvent corporation, which thereupon became indebted to him by a transfer of its note by the bank, or that he was entitled to claim a "bad debt" deduction, under the section corresponding to 23(k) on the basis of his having had a debt ascertained to be worthless and charged off within the taxable year. The Court held that he was not entitled to a loss deduction, because being on a cash receipts and disbursements basis of reporting income, he had suffered no loss, having made no cash outlay. The Court then also held that he was not entitled to a bad debt deduction because such debt as he acquired was not ascertained to have become worthless during the year, since it was worthless when acquired.

In the Supreme Court, the Government argued both points, but apparently the taxpayer insisted on only his right to the bad debt deduction, as, under that provision, it was not required that any payment be made during the year, but only that the taxpayer owned a debt which it was "ascertained to be worthless and charged off" during the taxable year. Revenue Act of 1927, c. 7, § 214(a) (7). The Court said:

"The petitioner claims the right to deduct half that sum as a debt 'ascertained to be worthless and charged off within the taxable year' under the Revenue Act of 1926, c. 27, § 214(a) (7); 44 Stat. 9, 27. * * *

"It seems to us that the Circuit Court of Appeals sufficiently answered this contention by remarking that the debt was worthless when acquired. There was nothing to charge off. The petitioner treats the case as one of an investment that later turns out to be bad. But in fact it was the satisfaction of an existing obligation of the petitioners having, it may be, the consequence of a momentary transfer of the old notes to the petitioner in order that they might be destroyed. It is very plain we think that the words of the statute cannot be taken to include a case of that kind." 283 U.S. 140, 141, 51 S.Ct. 373, 374.

See also Helvering v. Price, 309 U.S. 409, 60 S.Ct. 673, 84 L.Ed. 836, in which an excellent analysis of the Eckert case is given.

This seems to be a complete answer to appellant's contention if, in fact, the debts which arose upon the making of these payments were worthless when made.

3. We think the trial court had ample justification for his finding that the obligations flowing from the corporation to the taxpayers were worth in any one year substantially less than the balance remaining to be paid by the taxpayers finally to discharge their guaranty to the bank. Affidavits furnished by ap-

pellees for the Court's consideration included the statement that at no time after December 1, 1947—before the first payment was made by taxpayers—were the assets of the corporation worth in excess of $25,000. The taxpayers still owed more than $25,000 in 1949, the last year in which they made payments. The affidavit includes the statement that the notes received by them in 1949 had a value of $18,450. This statement of value is not controverted by any counter-affidavit, and although the taxpayers' stock and notes were sold in 1950 for a net figure of $31,000 as a "loss corporation," having value to a purchaser corporation that could profit by using the loss carryover benefits to its own tax advantage, there is no proof that these notes had any value in 1949 in excess of that alleged in ¶9 of the complaint and sworn to in support of the summary judgment.

4. Having concluded, as we have that the losses here incurred could not be deducted under Section 23(k), nevertheless we are told that they are not deductible under 23(e) because they were not "incurred in [a] transaction entered into for profit". This contention is so clearly at variance with what seems to us to be a common everyday interpretation of the meaning of simple language, that clear and convincing authority in support of this contention would have to be brought forward by appellant to support such construction. None is cited in appellant's brief. Schnitzer v. Commissioner, 9 Cir., 212 F.2d 437, does not really touch on this question. The contrary view is amply supported by Pollak v. Commissioner, supra; Fox v. Commissioner, 2 Cir., 190 F.2d 101; Greenspon v. Commissioner, 8 T.C. 431; and Marjorie Fleming Lloyd-Smith, 40 B.T.A. 214, affirmed 2 Cir., 116 F.2d 642.

We find, therefore, that these losses were not the result of the becoming worthless of debts and that they are not therefore covered by Section 23(k). We do find present all of the characteristics of the type loss that is treated of in Section 23(e). It follows that the trial court was right in finding the losses re-

sulting from the payments on the guaranty to the Trust Company of Georgia deductible as "losses sustained (by an individual) during the taxable year and not compensated for by insurance or otherwise * * * (2) * * * incurred in (a) transaction entered into for profit, though not connected with the trade or business * * *."

5. What has been said above in connection with the payments made to the Trust Company of Georgia is equally applicable as to the settlement of the liability of the taxpayers to the Ira H. Hardin Company on their guaranty against loss by it.

The judgments are affirmed.