William B. CUDLIP and Lynwood B. Cudlip, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 12165.

United States Court of Appeals, Sixth Circuit.

Feb. 18, 1955.

Edward L. Weber, Detroit, Mich., for petitioners.

John J. Kelley, Jr., Washington, D. C. (H. Brian Holland, Ellis N. Slack, Howard P. Locke and Walter Akerman, Jr., Washington, D. C., on the brief), for respondent.

Before MARTIN, McALLISTER and STEWART, Circuit Judges.

McALLISTER, Circuit Judge.

Petitioners, husband and wife, in their joint income tax return for 1949, claimed a deduction from gross income in the amount of $30,000 on the ground that it was a loss incurred in a transaction entered into for profit and properly allowable to them as a deduction under Section 23(e) (2) of the Internal Revenue Code, 26 U.S.C.A. The Commissioner's denial of the deduction was sustained by the Tax Court.

Petitioner, William B. Cudlip, is an attorney engaged in a legal practice having to do, principally, with banks, corporations, and business ventures. Sometime prior to 1947, he became interested in the WiRecorder Corporation, the sole asset of which, at the time of its organization in 1944—other than the cash capital paid in—was a license agreement with Armour Research Foundation to manufacture and use products, adapting the principles of recording sound on wire and tape, under Armour patents. Under the license agreement, the corporation was required to pay Armour the amount of $10,000 as a prepayment of royalties and, in addition, to spend at least $25,000 a year for three years in research work to perfect and exploit the devices licensed under the agreement, for use in the automotive field. It was provided that if these conditions were met, the license in this field would become exclusive.

The corporation spent not only the amounts required under the agreement, but substantial sums in excess thereof. This required the borrowing of money from a bank in Detroit, and in 1947, petitioner Cudlip became a co-guarantor, with two others, in a corporation note in the amount of $90,000 for money borrowed on behalf of the corporation from the bank. In spite of the financial support given, the corporation failed, and on November 23, 1949, notified the bank that it was unable to meet its obligation on the note. Petitioner Cudlip, in accordance with his guaranty agreement, on November 25, 1949, paid the bank $30,-000 of principal and $200 of interest due on the note. The other two guarantors also paid $30,000 each on their guaranty, so that no right of contribution remained in favor of any of them. The corporation was insolvent at that time; its corporate existence terminated on December 13, 1949; and petitioner Cudlip never recovered anything from the corporation for his payment.

In their joint income tax return in question, petitioners deducted, as a loss

resulting from a transaction entered into for profit, the amount of $30,000 by reason of the aforementioned payment by Mr. Cudlip as guarantor of the corporate note. The Commissioner refused to allow the deduction on the ground that the loss sustained as guarantor was on a non-business bad debt; and the Tax Court sustained the determination of the Commissioner.

On this review of the decision of the Tax Court, petitioners contend that the loss of $30,000, which was sustained by Mr. Cudlip by reason of his payment of that sum as guarantor of the corporation's note, was a loss resulting from a transaction entered into for profit, and that they are, accordingly, entitled to a deduction in the amount of the entire loss sustained under Section 23(e) (2) of the Internal Revenue Code, which provides:

"§ *23. Deductions from gross income.* In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(e) *Losses by individuals.* In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise——

\* \* \* \* \* \*

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business."

The Commissioner insists that the loss was a non-business bad debt under Section 23(k) of the Internal Revenue Code, which provides:

"§ *23. Deductions from gross income.* In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"*(k) Bad debts.*

"(1) *General rule.* Debts which become worthless within the taxable year; \* \* \*. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as

defined in paragraph (4) of this subsection. \* \* \*

"(4) *Non-business debts.* In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term 'non-business debt' means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

Under the foregoing section, the Commissioner contends that, instead of being allowed a deduction for the entire claimed loss, petitioners are entitled only to a deduction for a non-business bad debt as a short-term capital loss.

■ At the outset, it is to be said that Section 23(e) (2), upon which petitioners rely, and Section 23(k) (4), upon which the Commissioner's case is based, are mutually exclusive provisions. Spring City Foundry Co. v. C. I. R., 292 U.S. 182, 189, 54 S.Ct. 644, 78 L.Ed. 1200. Section 23(e) "is the broad residuary section which covers losses not specifically covered by Section 23(k) and other similar subsections of 23." Allen v. Edwards, D.C.Ga., 114 F.Supp. 672, 674. If the losses in this case were losses from debts which "become worthless within the taxable year," within the meaning of Section 23(k), they would not be allowable under Section 23(e).

We shall first discuss the contention of the Commissioner, which was sustained by the Tax Court. He submits that Mr. Cudlip's loss may be deductible only under Section 23(k) (4) as a debt which became worthless during the taxable year; and that since, under that section, it was a non-business bad debt as to Mr. Cudlip, it is deductible only as a short-term capital loss. The Commissioner's contention is based upon the proposition that upon payment of his guaranty, Mr.

Cudlip became subrogated to the rights of the bank against the corporation; that in standing in place of the bank as creditor, his loss is to be measured only to the extent that the debt is found worthless; that if the petitioner, having paid his guaranty, were ultimately to recover in full from the debtor, he would suffer no loss; that the loss resulting from payment of the guaranty is directly dependent upon the worthlessness of the debt and must be attributed thereto; and that since the taxpayer's loss is attributable to the worthlessness of the debt, he is limited, in claiming a deduction, to the provisions of Section 23(k) relating to deduction of losses from worthless debts.

In Pollak v. C. I. R., 3 Cir., 209 F.2d 57, 58, the same question that is presented in this case came before the court for decision. In its opinion, the court observed that it was doubtless true, as the Commissioner said, that under the doctrine of subrogation the corporation became indebted to the guarantor for the payments made by him on his endorsements and guaranty as and when he made them; but, the court went on, these payments were made under a legal obligation of endorsement and guaranty which the guarantor had entered into previously at a time when he believed that the corporation would prosper and that he would not lose as a result of his action. "It is utterly unrealistic", said the court, "to suggest, as the Tax Court does in its opinion in this case, that Leo L. Pollak when he entered into this transaction 'fully intended and expected to be repaid by the then existing solvent corporation if he was ever called upon to make good his endorsement or guaranty' ". The debt in the instant case was uncollectible from the instant it arose. The loss was not a debt which, within the meaning of Section 23(k) (4), "becomes worthless within the taxable year." "For the debt, if we call it such, was worthless when acquired and, therefore, did not and could not become worthless at any time thereafter." Pollak v. C. I. R., supra. Under similar facts, the Supreme Court, in

Eckert v. Burnet, 283 U.S. 140, 51 S.Ct. 373, 374, 75 L.Ed. 911, held that the debt due by a principal debtor to the endorsers of its notes who paid them was not deductible as a bad debt because it was worthless when acquired. As Justice Holmes, in the opinion of the court, said: "There was nothing to charge off." The ruling in the Eckert case was reaffirmed in Helvering v. Price, 309 U.S. 409, 60 S.Ct. 673, 84 L.Ed. 836. To the same effect, see the recent decision of the Court of Appeals of the Third Circuit in Ansley v. C. I. R., 217 F.2d 252.

The Commissioner seeks to distinguish the decision of the Supreme Court in Eckert v. Burnet, supra, on the ground that the court's ruling applied only to debts voluntarily acquired; and he contends that Helvering v. Price, supra, is distinguishable in that it decided only that a deduction was not proper in the year in which it was sought to be taken, and did not decide which of the deduction provisions otherwise might have been applicable. In Allen v. Edwards, supra, the same contention was advanced by the Commissioner with respect to the Eckert case, and in disposing of the argument, the court said: "If a debt worthless when acquired cannot be said to 'become worthless' in the hands of the taxpayer if voluntarily acquired, no reason appears why it can be said to 'become worthless' in the hands of the taxpayer when involuntarily acquired. Indeed, in the Eckert case, the leading case in which the principle is laid down, the debt was involuntarily acquired." 114 F.Supp. at page 675. Supporting these conclusions of the district court in the Allen case as to the distinction sought to be made by the Commissioner in the Eckert case, see Pollak v. C. I. R., supra, and Edwards v. Allen, 5 Cir., 216 F.2d 794, in which the judgment of the district court was affirmed on appeal. It is true that the facts in the cases of Eckert v. Burnet, supra, and Helvering v. Price, supra, are not identical to those in the instant case, but the reasoning in those cases clearly sustains the adjudications in Pollak v. C. I. R., supra, and Edwards v. Allen, supra.

■ For the pervading principle of the Eckert case is that a debt, worthless when created or acquired by a taxpayer, cannot be the basis of a bad debt deduction under Section 23(k) but must be deducted, if at all, as a loss under Section 23(e).

In Fox v. C. I. R., 2 Cir., 190 F.2d 101, 104, where petitioner had made a written guaranty for the debts of her husband, executed to protect her securities which had been pledged for his debts, the Court of Appeals reversed the decision of the Tax Court which had held that petitioner was not entitled, under Section 23(e), to claim a deduction as a loss in a transaction entered into for profit, or perhaps, more specifically, of cutting her losses, but was limited to a bad debt deduction under Section 23(k) (4). On review, petitioner objected to the reasoning of the Tax Court because of its "illusory character" since, at the time of her payment on the guaranty, her husband had been dead and his estate closed for several years. Petitioner argued that the Tax Court's theory that her payment resulted in a debt in her favor against her husband's estate amounted to a subrogation forced upon her—contrary to the equitable spirit of the doctrine—to yield her an utterly worthless claim, and a very real tax liability. In reversing the decision of the Tax Court, the Court of Appeals said: "It is utterly unrealistic to consider the payment as one made in any expectation of recovery over or of any legal claim for collection. Actually it was merely the fulfillment of her contractual obligation of the earlier date. The bad-debt provision thus had no direct application; only by straining the statutory language can we erect here a disembodied debt against an insolvent and long dead debtor."

The Commissioner seeks to distinguish Fox v. C. I. R., supra, as well as Greenspon v. C. I. R., 8 T.C. 431, cited by petitioners, from the controversy before us on the ground that, in the Fox case, the debtor had died; the executors of his insolvent estate had been discharged four years before the payment there in issue was made by the guarantor; and that the court, in its opinion, had observed that its decision did "no violence to the theory that a debt might arise upon payment by a guarantor where the principal debtor remains still in existence." As to Greenspon v. C. I. R., supra, it is sought to distinguish that case on the ground that the debtor was out of existence at the time the payment was made under the guaranty. These factors in the foregoing cases do not affect the principle which is found therein and which governs this case. The same contentions now presented by the Commissioner were advanced by him in Allen v. Edwards, D.C.Ga., 114 F.Supp. 672, and in disposing of them, the court said: "Counsel ● for the defendant seeks to distinguish those cases on the ground that in the former the principal debtor was dead at the time of payment and in the latter the principal debtor corporation had been liquidated at the time of payment of the guaranty. The Court does not consider that the death or liquidation of the principal debtor, prior to payment by the guarantor, should or does change the result. To so hold would permit the shifting of the tax by the simple expedient of deferring payment on the guaranty until the insolvent principal debtor or corporation is liquidated."

The Commissioner submits that Shiman v. C. I. R., 2 Cir., 60 F.2d 65, clearly supports his contentions in this case. The same argument was made in Pollak v. C. I. R., 3 Cir., 209 F.2d 57, where the court said: "The Commissioner strongly relies upon Shiman v. Commissioner of Internal Revenue * * * as authority to the contrary. That case, however, involved only the question whether a payment under a guaranty could be deducted as a bad debt or must be considered as a non-deductible gift. The court held in that setting that it was a bad debt and deductible as such. The question whether the payment could be deducted as a loss was not considered by the Court of Appeals." In the Shiman case, the petitioner had paid certain brokers on a guaranty after his principal had become,

as the court assumed, completely insolvent, and the court, in deciding the case, said [60 F.2d 67]: "Though there was no debt until Shiman paid the brokers, it then became such at once and was known to be worthless as soon as it arose." In Fox v. C. I. R., 2 Cir., 190 F.2d 101, decided some twenty years later in the same circuit, where the guarantor had ultimately paid according to her guaranty, the court, in holding that the transaction was not one involving a bad debt, said: "Nor could payment ten years later create a debt out of something less than even the proverbial stone." This is somewhat contradictory of the prior decision, and as the court, in Pollak v. C. I. R., supra, remarked with respect to the Shiman case: "To the extent that some of the language used by the court in its opinion is thought to be opposed to our conclusion in the case before us we believe it to be inconsistent with the rule announced in the Eckert case. In this connection it is to be noted that the Court of Appeals for the Second Circuit in its opinion in the Fox case, to which we have previously referred, made no reference whatever to its earlier Shiman opinion. Obviously the opinion in the Fox case must be taken as the current expression of the views of that court upon the question."

Taxation is concerned with realities; and we concur with the above mentioned authorities that the contentions here advanced by the Commissioner are completely unrealistic. The argument that, because of payment on the guaranty, petitioners would have a claim for reimbursement against the insolvent corporation that had no assets and that, therefore, their loss was a debt which became worthless during the taxable year in which they made the payment, is illusory and untenable; and the finding of the Tax Court that Mr. Cudlip "intended to, and did expect to, be repaid by WiRecorder in the event he was at any time required to fulfill his obligation under the guaranty agreement" finds no support in the evidence, or in any inferences that might be reasonably drawn therefrom.

In accordance with the foregoing, the decision of the Tax Court is reversed and the case remanded for allowance of the claimed deduction and such other further proceedings as may be necessary, consonant with this opinion.

STEWART, Circuit Judge (dissenting).

Since deductions for bad debt losses are governed by the special provisions of § 23(k) of the Code, such losses cannot be deducted under the ordinary loss provisions of § 23(e). When a taxpayer's loss results from the total or partial worthlessness of a debt owing to him, if a deduction cannot be taken under the provisions of § 23(k), it cannot be taken at all. That is what was decided in Spring City Foundry Co. v. C. I. R., 1934, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200. "The making of the specific provision as to debts indicates that these were to be considered as a special class and that losses on debts were not to be regarded as falling under the * * * general provision." 292 U.S. at page 189, 54 S.Ct. at page 647. It is worth noting that in the Spring City case the loss in question was held *not* to be deductible under the then applicable bad debt provisions of the statute, but was nonetheless held excluded from consideration under the ordinary loss provisions, since the loss *had* arisen from a debt.

If, then, the petitioner's loss in this case arose from a debt owing to him, it may not be considered under the ordinary loss provisions of § 23(e) of the Code. If it did not so arise, it may be so considered. The question therefore is whether or not the petitioner's loss arose from a debt.

As recognized in the majority opinion, it is hornbook law that when a guarantor is compelled to pay the principal creditor, he becomes by operation of law subrogated as a creditor of the principal debtor. In the nature of things, the debt which the guarantor thus acquires is usually worthless at the time of its

acquisition. Yet, until the Pollak and Allen cases, and today's decision in this case, the debt so arising has consistently been considered nonetheless deductible as a bad debt, although it became worthless immediately upon its ripening from a secondary obligation into a debt. Hamlen v. Welch, 1 Cir., 1940, 116 F.2d 413; Shiman v. C. I. R., 2 Cir., 1932, 60 F.2d 65; Whitcher v. Welch, D.C.Mass., 1938, 22 F.Supp. 763; Kate Baker Sherman, 1952, 18 T.C. 746; Harold Guyon Trimble, 1946, 6 T.C. 1231; Warren Leslie, Sr., 1946, 6 T.C. 488, 494; Alice DuPont Ortiz, 1940, 42 B.T.A. 173, 186–188, reversed sub nom. Helvering v. Wilmington Trust Co., 3 Cir., 1941, 124 F.2d 156, reversed (without discussion on this point) 1942, 316 U.S. 164, 62 S.Ct. 984, 86 L.Ed. 1352; D. W. Pierce, 1940, 41 B.T.A. 1261; H. Rodney Sharp, 1938, 38 B.T.A. 166; E. A. Roberts, 1937, 36 B.T.A. 549; Daniel Gimbel, 1937, 36 B.T.A. 539.[1]

Eckert v. Burnet, 1931, 283 U.S. 140, 51 S.Ct. 373, 75 L.Ed. 911, is not to the contrary. The decision in that case, as explained and followed in Helvering v. Price, 1940, 309 U.S. 409, 60 S.Ct. 673, 84 L.Ed. 836, was that the taxpayer who makes his return on the basis of cash receipts and cash disbursements must suffer a cash detriment before taking a deduction. In the Eckert case, the taxpayer substituted his own note for the corporation's obligation upon which he had been an endorser. The Court held

that until he paid the note, he could take no deduction at all.[2]

The dictum in the Eckert case that a debt worthless when acquired cannot later become worthless originated in the Court of Appeals opinion in that case, 42 F.2d 158, as was pointed out by Judge Learned Hand in Shiman v. C. I. R., supra. Thus, the court in which that dictum originated, shortly thereafter refused to apply it to a guaranty situation, and so consistently have other courts, until Pollak v. C. I. R.; Edwards v. Allen, and this case. See Hamlen v. Welch; Whitcher v. Welch; Kate Baker Sherman; Harold Guyon Trimble; Warren Leslie, Sr.; Alice DuPont Ortiz; D. W. Pierce; H. Rodney Sharp; E. A. Roberts; Daniel Gimbel, all cited above.

The statement that a debt worthless when acquired cannot later become worthless has an attractive ring to it, which no doubt accounts for its frequent repetition. Yet it is only a rather inaccurate way of saying that a transaction which is donative from the outset, even though in form a loan or a guaranty, cannot be the basis of a deduction, because in reality the transaction from the beginning was a gift or a contribution to capital. E.g. Hoyt v. C. I. R., 2 Cir., 1944, 145 F.2d 634. That issue is not involved in the present case.

For the reasons stated, I think the Tax Court was correct in finding that the loss which the petitioner sustained in the present case was a bad debt loss,[3] and

---

1. See Mertens Law of Federal Income Taxation (1953 Revision), Vol. 5, Par. 30.11, page 412, where it is stated, in part, as follows: "A voluntary loan which gives rise to a debt which is worthless when created or acquired—in the sense that it has no value—may not then or subsequently be deducted as a bad debt. Advances under such circumstances may generally be characterized as either gifts or contributions to capital, but not debts. * * *

"Where the debt is created involuntarily 'the foregoing rules do not apply and the taxpayer may be allowed a bad debt deduction upon the worthlessness of his claim. This principle finds illustration in the cases of an endorsement or the assumption of the obligation by a surety.

In such cases the debt arises only when the endorser or surety pays, and he pays only if the prior obligor is unable to do so. In such cases a bad debt deduction may be allowed, but only if the principal debtor is still in existence."

2. The taxpayer had argued that he was entitled to either a bad debt deduction *or* an ordinary loss deduction. See Eckert opinion in Court of Appeals, 2 Cir., 1930, 42 F.2d 158; Helvering v. Price, supra.

3. The petitioner himself treated the loss as one arising from a debt. After paying on his guaranty he notified the corporate debtor in writing of his claim against it. Subsequently, in his tax return he claimed the deduction as a business bad debt under § 23(k) (1) of the Code.

that its finding that the debt was a non-business debt was not erroneous. Commissioner of Internal Revenue v. Smith, 2 Cir., 1953, 203 F.2d 310. Accordingly, I think the Tax Court's decision permitting the petitioner a nonbusiness bad debt deduction should be affirmed.[4]

If what has been said seems overly technical, it may be well to point out some important realities. At the time petitioner's corporation was organized it had commitments requiring it to expend $85,-000 during its first three years of existence. Yet its capital consisted of only $5,000. Obviously more risk capital was required.

Had the petitioner made the necessary additional investment in the conventional form of subscribing for stock, his loss upon the failure of the corporation would have been a capital loss, § 23(g) (2), I.R.C. Had he made the investment in the form of a loan to the corporation evidenced by an instrument bearing interest coupons, his loss would likewise have been a capital loss, § 23(k) (2), I.R.C. Had he made the additional investment in the form of an ordinary loan to the corporation, his loss would likewise have been a capital loss, § 23(k) (4) I.R.C., Commissioner of Internal Revenue v. Smith, supra.

Because the petitioner happened instead to risk his money by guaranteeing the corporation's bank loans, the court now holds that the petitioner may take an ordinary loss, deductible in full from his ordinary income. Yet from the petitioner's viewpoint, the situation would have been precisely the same had he himself borrowed the money and then lent it to the corporation. It therefore seems to me that the result reached by the court in this case is significantly unrealistic.

From now on an investor in this Circuit need not be content with a capital loss if he loses his risk capital. If only he can make his investment in the form of a guaranty, his loss will be deductible in full from his ordinary income if the venture is unsuccessful.[5] Conversely, the taxpayer who becomes a guarantor of a corporation's indebtedness for a reason other than to make a profit (and not in his trade or business), will be able to take no deduction at all if he pays on the guaranty and can collect nothing from the original debtor. That follows from the reasoning of today's decision that the debt to which he is subrogated is not deductible, because it did not "become worthless" but was "worthless when acquired."

In regretfully parting company with my respected colleagues, I realize that I part company with our brethren of the Third and Fifth Circuits as well. Pollak v. C. I. R., supra; Edwards v. Allen, supra. I do so because the result reached by them seems to me neither permissible under the law nor equitable upon the facts, and at such length because this rather important question of tax law is at the moment in a critical stage of its development.

4. Fox v. C. I. R., 2 Cir., 1951, 190 F.2d 101, is not to the contrary. In that case the debtor had been dead and his insolvent estate long closed when the guarantor paid. The guarantor was allowed an ordinary loss. The decision is justified upon the premise that there can be no debt when there is no debtor. The court was careful to point out that its decision "does no violence to the theory that a debt might arise upon payment by a guarantor where the principal debtor remains still in existence." Where the principal debtor is a corporation, and its "existence" within the control of the guarantor, such a result would seem more questionable. Cf. Abraham Greenspon, 1947, 8 T.C. 431.

5. Before the addition of subsection 23(k) (4) a guarantor did receive an ordinary loss deduction in a situation like the present one. The House Ways and Means Committee stated the new subsection was "designed to remove existing inequities." H.Rep. No. 2333, 77th Cong., 1st Sess. (1942-2 Cum.Bull. 372, 408).